McCagg et al. *v.* Heacock et al.

## EZRA B. McCAGG *et al.*

*v.*

## WILLIAM O. HEACOCK *et al.*

1. STATUTE OF LIMITATIONS — *color of title.* The mortgagor in a mortgage, dated October 25, 1836, conveyed the equity of redemption to the mortgagee in satisfaction of the debt on the 1st day of July, 1840. The premises remained vacant until January 13, 1853, when the grantee sold them, and the purchaser took possession; the grantee in the mean time having paid all the taxes. On the 5th of July, 1837, a judgment had been recovered against the mortgagor, on which his equity of redemption was sold February 24th, 1841, and deeded by the sheriff June 13th, 1842. On the 11th of February, 1854, the claimants under the sheriff's deed filed a bill against the occupants claiming under the mortgagee, praying to redeem. The defendants set up color of title and payment of taxes for more than seven years while the land was vacant, under the limitation law. *Held,* to be a good defense, the deed of release from the mortgagor, dated July 1st, 1840, being color of title under which the defendants had gone into possession.

2. Any instrument, indicating an intention to pass a title to lands, of which a description is given, from one party to another, gives color of title to the lands described. For some reason, such an instrument often fails to effect that intention, and passes only the color, or semblance of a title. It makes no difference whether the instrument fails to pass a title because the grantor had none to convey, or had no authority in law or in fact to convey one. Inasmuch as the instrument fails to pass an absolute title, for the reason that the grantor was not possessed of one or more necessary requisites, it gives the semblance or color only of what its effect would be if they were not wanting.

3. SAME — *of the good faith required — and the presumption thereof.* The law presumes that all acts are done in good faith until there is evidence to the contrary; and color of title is presumed to have been thus acquired, till it is shown to have been acquired otherwise.

4. The good faith, required by the statute, in the creation or acquisition of color of title, is a freedom from a design to defraud the person having the better title.

5. The knowledge of an adverse claim to, or lien upon property, does not, of itself, indicate bad faith in a purchaser, and is not even evidence of it, unless accompanied by some improper means to defeat such claim or lien.

6. LEGAL PRESUMPTIONS — *upon what principle they rest.* Legal presumptions are rules established by the common law, or by statute, and are founded upon the first principles of justice, or the laws of nature, or the experienced course of human conduct and affairs, and the connection usually found to exist between certain things.

7. Where one fact is proved or ascertained, another, its uniform concomitant, is universally and safely presumed; it is this uniformly experienced connection which leads to its recognition by law, without other proof Many of these presumptions

are conclusive because they have been found to be so general and uniform as to render it expedient for the common good that this connection should be taken to be inseparable and universal. They have been adopted by common consent from motives of public policy, for the sake of greater certainty and the promotion of the quiet and peace of community, and, therefore, all opposing evidence is forbidden.

8. STATUTE OF LIMITATIONS — *legal presumptions.* Legal presumptions, as an element in the doctrine of limitations, in relation to the time within which the remedy for the recovery of real estate shall be asserted, considered.

9. SAME — *application of these principles to the act of* 1839 — *and herein of the ownership of land, as fixed by that act.* In this country the taxes upon land are usually paid by the true owner; and after the payment of the same for seven successive years, under claim and color of title made in good faith, and after actual possession taken under such color of title, the presumption of ownership is so strong that the legislature, for the promotion of quiet and the peace of community, in its wisdom declared it to be a legal conclusion from such circumstances, that the possessor was the true owner, to the extent and according to the purport of his paper title.

WRIT OF ERROR to the Superior Court of Chicago.

This was a bill in chancery, filed at the February term, 1854, of the Superior Court of Chicago by the defendants in error, to redeem certain lots in Chicago from the plaintiffs in error, who claimed under a mortgage and a release executed by the mortgagor to the mortgagee. The complainants claimed under a judgment, rendered intermediate the mortgage and the release, against the mortgagor. There was a decree below for the complainants. The facts appear in the opinion of the court.

Mr. W. C. GOUDY, for the plaintiff in error.

Mr. A. GARRISON, for the defendant in error.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

This is a suit in equity by the widow and heirs-at-law of Reuben B. Heacock, to redeem seventeen lots of land in block 129 in school section addition to Chicago from a mortgage dated October 25, 1836, executed by Russell E. Heacock and wife to Henry Van Antwerp. In the year 1838, a suit by *scire facias* was commenced to foreclose the mortgage, in which a judgment was rendered on the 16th May, 1839, directing a sale of seven-

teen of the lots mentioned in the mortgage; and it was released as to the remaining three lots. On the 1st day of July, 1840, Russell E. Heacock and wife conveyed the seventeen lots to Van Antwerp, in satisfaction of the debt. The premises remained vacant and unoccupied from 1840 until January 13, 1853, when Van Antwerp sold the same to McCagg, one of the plaintiffs in error; during which time Van Antwerp paid all the taxes thereon. McCagg entered into possession soon after his purchase, and was in possession when the suit was commenced on the 11th of February, 1854. On the 5th of July, 1837, James Kinzie *et al.* recovered a judgment in the Municipal Court of Chicago against Russell E. Heacock for $165.43, and under a *pluries fi. fa.*, which was issued thereon, and dated January 13, 1841, all the right, title and interest of the defendant therein was, on the 24th of February, 1841, sold to Reuben B. Heacock. There was no redemption from the sale, and on the 13th of June, 1842, the sheriff executed a deed to the purchaser. Russell E. Heacock died in 1849, intestate, and Reuben B. Heacock died in 1854, intestate, leaving the appellees (excepting Elizabeth Heacock, his widow) his heirs-at-law, who were also heirs-at-law of Russell E. Heacock. Pending the suit, McCagg filed a cross-bill, praying that the appellees might be decreed to release to him all claim which they might have to the premises. We think it is unnecessary to discuss many of the questions raised in argument. The deed of Russell E. Heacock to Van Antwerp, dated July 1, 1840, was color of title. Any instrument, indicating an intention to pass a title to lands, of which a description is given, from one party to another, gives color of title to the lands described.

For some reason, such an instrument often fails to effect that intention, and passes only the color, or semblance of a title. It makes no difference whether the instrument fails to pass a title because the grantor had none to convey, or had no authority in law or in fact to convey one. Inasmuch as the instrument fails to pass an absolute title, for the reason that the grantor was not possessed of one or more necessary requisites, it gives the semblance or color only of what its effect would be

if they were not wanting. For more than seven years from the time when Van Antwerp acquired his color of title, the premises were vacant and unoccupied; and during all that time he paid all taxes assessed thereon. The law presumes that all acts are done in good faith until there is evidence to the contrary; and color of title is presumed to have been thus acquired, till it is shown to have been acquired otherwise. The good faith, required by the statute, in the creation or acquisition of color of title, is a freedom from a design to defraud the person having the better title.

The lands in controversy were conveyed to pay a just debt, and there was not even a suggestion of any fraud. The appellees do not seek to redeem as the heirs-at-law of Russell E. Heacock; and under the allegations of their bill they are not at liberty to insist that undue advantage was taken of his necessitous condition. They seek to redeem as heirs-at-law of Reuben B. Heacock, under a title anterior in its origin to the deed to Van Antwerp; and as heirs of Reuben B. Heacock, claiming under a title adverse to that of Russell E. Heacock, they have no right to inquire into the circumstances under which his deed to Van Antwerp was made.

But, after careful examination of the record we are unable to discover circumstances which would entitle the appellees to relief as heirs of Russell E. Heacock. Three of the lots mortgaged were voluntarily released, and his indebtedness was canceled for the residue of them, and there is no evidence of any oppression, or undue advantage taken of him.

It was insisted in argument that Van Antwerp had notice of the judgment lien of Kinzie *et al.* upon the equity of redemption. The taking of a conveyance from Heacock with such notice, was not a fraud upon Kinzie *et al.* It impaired none of their rights. The knowledge of an adverse claim to, or lien upon property, does not, of itself, indicate bad faith in a purchaser, and is not even evidence of it, unless accompanied by some improper means to defeat such claim or lien. When this suit was commenced the grantee of Van Antwerp was in possession of the premises, and his grantor having had

color of title, made in good faith, for more than seven years, and having (during that time) paid the taxes, the appellant, McCagg, acquired a complete bar.

The act of March 2d, 1839, which was subsequently incorporated into the Revised Statutes of 1845, did not introduce a new mode of acquiring title, but applied to circumstances peculiar to an unsettled country, a mode of confirming titles, as old as the common law itself.

Legal presumptions are rules established by the common law, or by statute, and are founded upon the first principles of justice or the laws of nature, or the experienced course of human conduct and affairs, and the connection usually found to exist between certain things.

. Where one fact is proved or ascertained, another, its uniform concomitant, is universally and safely presumed; it is this uniformly experienced connection which leads to its recognition by law, without other proof. Many of these presumptions are conclusive because they have been found to be so general and uniform as to render it expedient for the common good that this connection should be taken to be inseparable and universal. They have been adopted by common consent from motives of public policy, for the sake of greater certainty and the promotion of the quiet and peace of community, and, therefore, all opposing evidence is forbidden.

In some cases this common consent is declared through the medium of judicial tribunals, as a part of the common law. Before the passage of the statute of West. 1 (3 Edw. I, ch. 39), the titles to land and other rights were presumed from possession, or a *quasi* possession, from the time whereof the memory of man runneth not to the contrary. By that act the period of legal memory was established to be the first day of the reign of Richard I (July 6, 1189), and titles to lands and incorporeal rights were established by legal conclusions drawn from circumstances existing during the period of time thus limited.

The statute 32 Henry VIII, barred the writ of right after sixty years, and by a legal conclusion, drawn by the courts, the true owner was divested of his right of property, and the same

was vested in the disseizor. 3 Black. Com. 196. So the statute 21 James I, barred the right of entry after an adverse possession of twenty years, and by a like conclusion the right of possession was vested in the disseizor. In each case the statute fixed the circumstances under which an action should not be sustained, and the legal conclusion therefrom was drawn by courts. The circumstances designated were such as the legislature thought proper to name, but other circumstances might have been named, as, for example, the payment of taxes or the rendition of knight service; or the time might have been more limited if the legislature had thought proper. It is undoubtedly within the power of the legislature to extend such conclusions of law to such cases and to such circumstances as it may deem best for the public good.

In this country the taxes upon land are usually paid by the true owner; and after payment of the same for seven successive years under claim and color of title made in good faith, and after actual possession taken under such color of title, the presumption of ownership is so strong that the legislature for the promotion of quiet and the peace of community, in its wisdom declared it to be a legal conclusion from such circumstances, that the possessor *was* the true owner to the extent and according to the purport of his paper title.

The conclusion thus declared we are required to administer as a part of the law of the land.

The decree of the court below will be reversed, and a decree entered in this court dismissing the original bill and granting the prayer of the cross-bill.

*Decree reversed.*