## Merchants' National Bank of Peoria v. Nichols & Shepard Company.

### Gen. No. 4,552.

1. AGENT—*persons dealing with, should ascertain extent of authority of.* Before making loans to an agent upon account of his principal the lendor should investigate and ascertain the extent of the authority of such agent.

2. AGENT—*when notice to, is not notice to principal.* The rule that notice to the agent is notice to his principal does not apply when the circumstances are such as to rebut the presumption upon which the rule rests.

3. OVERDRAFTS—*when depositor not liable for.* Unless it be found as a question of fact that a depositor has been so negligent as to create an estoppel against him because of his failure to examine his pass book and returned checks, he is not liable for the unauthorized overdraft made by his agent upon his account.

4. OVERDRAFTS—*when principal not liable for unauthorized.* A principal is not liable for the unauthorized overdrafts of his agent when no estoppel exists against him and he has not received the benefit thereof.

Action of assumpsit. Appeal from the Circuit Court of Peoria County; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed December 2, 1905.

PAGE, WEAD and HUNTER, for appellant.

JOHN T. NICHOLS and F. H. TICHENOR, for appellee.

MR. PRESIDING JUSTICE VICKERS delivered the opinion of the court.

Appellant brought this action of assumpsit against appellee to recover the amount of an overdraft. Appellee is a Michigan corporation, with its principal office at Battle Creek, and is engaged in the manufacture and sale of threshing machinery, such as separators, traction engines, and the various parts, attachments and appliances necessary to make a complete threshing outfit, and to supply necessary repairs for the same. For the purpose of placing its products on the market and to facilitate the sale and delivery of its goods appellee established eleven distributing

points and allotted certain territory to each. One of these points was located in Peoria and the territory belonging to it was the state of Illinois and part of Missouri. Each subdivision of territory was placed in the hands of a general manager of appellee's business within the territory respectively assigned to the several fields. In pursuance of this general method appellee appointed W. H. Harte its agent for the Illinois territory on January 1, 1900, with headquarters at Bloomington, where he remained in charge of the business until January, 1902, when the Illinois agency was removed to Peoria; here Harte opened up headquarters and continued the business until he was discharged July 18, 1904. Harte rented a building in which he stored appellee's goods, and from which orders were filled for threshing outfits and repairs. He had full charge of the employment of agents and employees, fixed and paid their salaries, made and paid bills for printing, clerk hire, freights and all other items of expense incurred in connection with appellee's business under his charge. The funds for this purpose were provided by appellee, either from cash received by Harte from sales and collections or sent to him from the home office. Harte was authorized to collect any money due appellee in his territory, and for a considerable portion of the time he received checks and drafts from customers payable to appellee which he endorsed for appellee and deposited the proceeds in the bank. Soon after Harte removed to Peoria he opened an active account in the Commercial National Bank in the name of appellee and deposited funds which came into his hands from time to time belonging to appellee, and on which he drew checks in the regular course of business. A part of the checks drawn by Harte were signed by W. H. Harte, manager, but later he used a rubber stamp with the words "Nichols and Shepard Co. By————" on it, and Harte would write his name after the word "by". Each month the bank posted up the account on a pass book and returned the canceled checks and pass book to Harte, who kept it in the Peoria office. It is shown that on several occasions the account

was overdrawn, and when this occurred the bank charged an item of interest in the pass book when it was posted. These overdrafts occurred ten or more times during the time the account was open, but all of them were covered by deposits made by Harte except the last one, which is unpaid, and for the collection of which this suit is brought. The amount of the overdraft in July, 1904, when Harte was dismissed from appellee's service, was $1,023.60. The checks, the payment of which created this overdraft, were drawn by Harte in the regular course of business and the proceeds applied to the business of appellee except four checks, aggregating $95.25, which Harte received personally. Two of the checks, amounting to $604.28, were sent to the home office and paid to appellee. No officer or agent of appellee made any examination of the books or accounts or his bank pass book until his shortage with the company led to his final dismissal in July, 1904; nor was there at any time any notice given by appellant of the overdrafts to any one connected with appellee except Harte. Harte was required to make monthly reports to appellee, in which a statement of the cash received and paid out in each month was shown. These statements were made regularly every month, commencing January 31, 1902, and ending June 30, 1904. These statements always showed a cash balance on hand in various sums ranging from $338.32, the smallest balance, which was in May, 1902, to $1,688.21, the largest, which was in August, 1903. These statements did not show where the cash balance was, but simply reported it as "cash on hand." These reports were false in many instances, if not in all, in that Harte reported "cash on hand" when, in fact, he did not have the money either in bank or elsewhere. He was short in his accounts and reported his shortage as "cash on hand." The crisis in his career was reached in July, 1904, when he had an overdraft in the bank, a report of $926.72 of cash on hand on June 30th and no resources to pay current expenses. He drew for expense money in July and offered no explanation to his principal why he

did not apply the cash on hand shown by his June statement. This led to suspicion, investigation followed and the real condition of affairs was brought to light. Harte was checked up and discharged and his total shortage with appellee, excluding the overdraft, was $2,225.57. Appellant demanded payment of the overdraft of appellee, and the liability being denied, this suit was brought, a trial had before the court without a jury, which resulted in a finding for the defendant below, and the bank appeals to this court.

The assignments of error raise the question whether the court properly found appellee not liable for the overdraft.

It is not pretended that Harte had any express authority to borrow money on appellee's account by overdraft or otherwise. Appellant contends that the bank account was the account of appellee and not that of Harte. This we think under the evidence must be conceded. While Harte had entire control of the deposits and withdrawals in this account, still he was acting for appellee, was collecting and depositing and paying out money in his capacity as agent, which at all times belonged to his principal. In opening the account in the first instance he had express authority by letter from appellee to go ahead and select any bank that he desired. It is fairly to be inferred that appellee contemplated that Harte would open an account in a bank. He had done so at Bloomington and he continued the same method at Peoria. The account was in the corporate name of appellee and checks drawn on it were signed by appellee by its agent Harte. We cannot see the force in the contention that this bank account was Harte's account and not the account of appellee. It does not follow however, that because Harte had authority to open an account in the bank, make deposits of appellee's funds and draw them out again for the purposes of his principal's business that therefore he had also the further authority to create a debt against appellee by issuing checks the payment of which created an overdraft against appellee. Appellant had full notice that in dealing with Harte he was the agent of ap-

pellee.   It was the plain legal duty of appellant to investigate the extent of his authority before making loans to his principal upon his request.   The case is no way different from a loan made to appellee upon a note executed by Harte, and we presume it would not be seriously contended that he could bind the corporation by a promissory note made without express authority or under circumstances showing that the exercise of the power was indispensable to carry out the powers conferred.

It is said however that appellee owed appellant the duty to examine the pass book, and having failed and neglected to do so, appellee is chargeable with notice that the pass book disclosed overdrafts previous to the one in question, and having such constructive notice and having made no objection it is now estopped to question his authority to so overdraw.   The duty of a depositor to examine his returned checks and pass book, and the estoppel created by his failure to do so, has been the subject of frequent judicial decision, and on this, as on many other questions, the conclusions reached are not harmonious.

The Supreme Court of the United States in Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, holds that where checks were raised by the clerk of the depositor and paid by the bank without negligence on its part, a failure to examine the pass book and canceled checks which showed the forgeries, created an estoppel against the depositor and that he could not recover the loss sustained by the payment of the checks thus raised.   This is perhaps the strongest case to be found tending to establish the contention of appellant.   Our Supreme Court is committed to a less stringent rule, as will be seen by reference to the case of Manufacturers' Nat. Bank v. Barnes, et al., 65 Ill. 69.   It is there said:   " There is at first blush a certain plausibility in this view, but it will not bear examination.   The same question arose in the case of Weisser v. Denison, 10 N. Y. 68.   There, as here, a clerk had drawn checks in the name of his employer and the pass book had been several times written up and the checks returned before discovery of the

fraud. The court held that the balancing of the pass book and the return of the checks are for the protection of the depositor, and not for that of the bank, and the failure of the depositor to examine the checks is not such negligence on his part as to exonerate the bank from liability for the continued payment of checks improperly drawn." The opinion concludes as follows: " We consider the reasoning of the New York Court of Appeals in the case cited very satisfactory; and adopt its decision as the better rule." It thus appears that the question under consideration is not an open one in this state and no occasion exists for the examination of authorities outside to determine what is the better rule or where the weight of authority appears to be. Whether negligence and consequent estoppel exist are ordinarily a question of fact for the jury. Randolph on Commercial Paper, sec. 1782; Hardy v. Chesapeake Bank, 51 Md. 562. Whether the decision in Manufacturers' Nat. Bank v. Barnes, *supra,* be interpreted as announcing the conclusion of the court upon the question involved as a conclusion of fact from the evidence in that case, or as treating the question as one of law arising out of the undisputed facts, it is equally persuasive in controlling our decision here. The facts here are much stronger against the inference of negligence than in the Barnes case. There the depositor and the agent were in the same office and Barnes had easy access to the pass book and checks, and if in such a state of facts no negligence and estoppel exist, how can it be reasonably claimed that appellee in a foreign state many miles away from the pass book should be estopped by its failure to examine?

It is next contended that since Harte was the agent of appellee who was intrusted with the entire management of appellee's business, including the bank account, that notice to Harte is notice to appellee. Undoubtedly it is a general rule that notice to an agent, while acting in the line of his authority, and in reference to a matter within his agency, is notice to the principal. Mechem on Agency, sec. 718; Burton v. Perry, 146 Ill. 71. The ground upon which

this rule of law rests is the presumption that the agent does his duty to his principal, and that it is his duty to notify his principal of any matter that may come to his knowledge in the course of his employment pertaining to the business in his hands which affects the principal's interests.

A presumption is defined to be the probable inference which common sense, enlightened by human knowledge and experience, draws from the connection, relation and coincidence of facts and circumstances with each other. Am. & Eng. Ency., Vol. 22, p. 1234, 2nd ed.; McCagg v. Heacock, 34 Ill. 476.

The rule that notice to the agent is notice to his principal does not apply when the circumstances are such as to rebut the presumption upon which the rule rests. Where the person claiming the benefit of the notice colludes with the agent to defraud the principal the rule will not apply. Mechem on Agency, sec. 721. Where the agent is engaged in a scheme to deceive and defraud his principal and notice to the principal would lead to the exposure of his fraudulent design the rule will not apply. If the knowledge is such as, from the nature of it, the reasonable conclusion would be that the agent would not disclose it, the principal will be unaffected by notice to the agent. Cowan v. Curran, 216 Ill. 598. Here the agent was engaged in an unauthorized scheme of overdrawing the bank account to cover up his shortage with his principal. He knew that a disclosure to his principal of the true status of his affairs would result in his summary dismissal from his employment, as it did when the facts were brought to appellee's knowledge. The facts and circumstances surrounding the agent are such as to make it reasonably certain that he would not communicate his knowledge to his principal; hence the case falls within the exception to the rule, and appellee is not affected by notice to Harte that he had created the overdraft. See also Welsh v. Bank, 73 N. Y. 424; Henry v. Allen, 151 N. Y. 1; Bienenstok v. Ammidown, 155 N. Y. 47; Bank v. Cupp, 91 Pa. St. 315; Gunster v. Power Co., 181 Pa. St. 327.

It is next contended that appellee received the benefit of the overdraft, and consequently it should not be permitted to retain the benefit of the unauthorized act of its agent and not be required to pay the overdraft.

It is true, as shown in the statement of facts, that the proceeds of the checks went to pay the current expenses of appellee and were received by appellee on account, except four small checks which were appropriated by Harte, the amount of which is $95.25.

The case of Nat. Bank of Las Vegas v. Oberne, 121 Ill. 25, is cited and relied on to sustain appellant's position on this point. In that case an agent of Oberne, in New Mexico, made an unauthorized loan in the name of his principal and executed a note for $1,000, signing the principal's name to the note, and also to the guaranty on the note. The proceeds of the note were deposited to the credit of the principal, and the agent drew checks on the same in payment for goods which were shipped to the principal at Chicago to the amount of $560.27. The agent was authorized to buy the goods, and they were received and retained by the principals. Under this state of facts the court held that it was inequitable for the principals to retain the proceeds of the unauthorized act and at the same time deny liability for the loan, and, accordingly, the principals were held liable only to the extent of $560.27. It will be seen at once that if the defense in the Oberne case had prevailed the principals would have had goods valued at $560.27 for which they had paid nothing. To allow them to retain the goods and refuse to reimburse the party who had furnished the money to pay for them would be highly inequitable and unjust. The facts in the case at bar we think distinguish it from the Oberne case. Here appellee has received nothing as a result of Harte's unauthorized act for which it has not fully paid, and the evidence is that appellee is $2,225 loser on Harte's account after crediting the proceeds of the overdraft.

In the later case of Fay v. Slaughter, 194 Ill. 157, the court refuses to carry the rule laid down in the Oberne

case any further than is necessary to prevent an inequity such as existed in that case. We are of the opinion that no such inequity exists in this case as requires the application of the rule laid down in the Oberne case.

We have carefully considered the other grounds urged by appellant as reasons for reversing this judgment, but having reached the conclusion that none of them are sufficient to justify a reversal, no useful purpose would be served by extending this opinion in their discussion

The judgment is affirmed.

*Affirmed.*