Third Natl. Exch. Bank v. Smith, 20 N. M. 264.

[No. 1737, April 27, 1915.]
## THIRD NATIONAL EXCHANGE BANK OF SANDUSKY, OHIO, et al. v. SMITH et ux.
[Rehearing Denied May 15, 1915.]

### SYLLABUS BY THE COURT.

1. Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt.arises from the circumstances under which the land is held, the identity of the land conveyed, or the construction of the instrument under which the party in possession claims title.                          P. 275

2. "Good faith" in the creation or acquisition of color of title, is freedom from a design to defraud the person having the better title, and the knowledge of an adverse claim to or lien upon property does not, of itself, indicate bad faith ·in a purchaser, and is not even evidence of it, unless accompanied by some improper means to defeat such claim or lien.

P. 276

3. A holder of color of title to a small tract of government land embraced within the limits of the original survey of a Mexican land grant, which was without the limits of such grant as finally confirmed by the Court of Private Land Claims, who had, or whose predecessors in title had, expended large sums in improving the land, and, where the original allotment of said land and the settlement and improvements thereon had been made in good faith, has "claim or color of·title made or acquired in good faith" within the spirit of the Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1913, §§ 4997-5002). Hence a contract for the sale of said land is not an illegal contract.          P. 276

Appeal from District Court, Dona Ana County; E. L. Medler, Judge.

Action by the Third National Exchange Bank of Sandusky, Ohio, and another against D. B. Smith and another. From judgment for plaintiffs, defendants appeal. Affirmed.

Third Natl. Exch. Bank v. Smith, 20 N. M. 264.

See, also, 17 N. M. 166, 125 Pac. 632.

Holt & Sutherland of Las Cruces and F. G. Morris and S. B. Gillett of El Paso, Texas, for appellants.

The owners of the Refugio Colony Grant had the right under express provisions of law to have their boundaries established and their title confirmed, and the judgment, not having been appealed from, became binding upon them. The act creating the Court of Private Land Claims was passed for the purpose of settling good faith claims to such lands. They cannot persist in disputing the matter settled by that court.

Center v. Cady, 184 Fed. 605; Vilas v. Prince, 88 Fed. 682; Lindt v. Uihlein, 89 N. W. 214; Diffebock v. Hawke, 115 U. S. 392, 29 L. Ed. 423; Ramsey v. Wilson, 100 Pac. 177.

The land was public domain and there was no consideration for the notes.

Combs v. Miller, 103 Pac. 590; Lamb v. James, 87 Tex. 485, 29 S. W. 647; Rayner Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554.

R. L. Young and J. H. Paxton of Las Cruces and A. S. Thurmond and W. H. Winter of El Paso, Texas, for appellees.

The admissions by appellants that Reinhart's predecessors in title acquired the land by conveyances and in good faith and that he held under mesne conveyances from the Refugio Grant down to himself, constitute him a holder under color of title and in good faith.

Armijo v. Armijo, 4 N. M. 135; Searle v. School Dist., 133 U. S. 553, 33 L. Ed. 740; McCagg v. Heacock, 34 Ill. 479; Tidwell v. Chiricahua Cattle Co., 53 Pac. 392; Cameron v. U. S., 148 U. S. 3, 13 S. C. R. 595; N. M. R. & C. Ry. Co. v. Crouch, 4 N. M. 293; Coryell v. Cain, 16 Cal. 567; Christy v. Scott, 14 How. 292, 14 L. Ed. 426; Atherton v. Fowler, 96 U. S. 513, 14 L. Ed. 732; Crocker v. Robertson, 8 Ia. 405.

The good faith of Reinhart was not affected by the judgment pleaded by appellants.

Dennison v. U. S., 168 U. S. 241; Cromwell v. County of Sac, 94 U. S. 351; Whitney v. U. S., 167 U. S. 529, 42 L. Ed. 453; Stryker v. Goodnow, 123 U. S. 527; Hale v. Finch, 104 U. S. 261; U. S. v. Green, 185 U. S. 640; U. S. v. Charez, 159 U. S. 452.

A confirmation of a part claimed and a refusal to confirm the rest does not affect the right of any person and between him and another person.

Ainsa v. N. M. & A. R. Co., 175 U. S. 76, 20 S. C. R. 33; U. S. v. Charez, 159 U. S. 452, 16 S. C. R. 62.

Smith, appellant, admitting that he received what he contracted for, cannot avoid the contract, except upon fraud or misrepresentation.

Fay v. Richards, 21 Wend. 626; Perkins v. Gay, 3 S. & R. (Pa.) 327; Hunt v. Turney, 9 Tex. 389; Pom. Eq. (2d Ed.) sec. 937; Beemis v. Belker, 1 Kan. 226; Harris v. Remmels, 12 How. 79, 13 L. Ed. 901; Shermerhorn v. Talman, 14 N. Y. (4 Kan.) 93; Tracy v. Talmadge, Id. 162.

Good faith does not exclude knowledge of adverse claims, defect in title, and notice, actual or constructive, is of no consequence.

Chickering v. Failes, 26 Ill. 507.

### STATEMENT OF FACTS.

The Third National Exchange Bank of Sandusky, Ohio, and F. P. Zollinger, as trustee, sued the appellants, D. B. Smith and his wife, Gertrude W. Smith, to recover on three promissory notes, each for the sum of $4,500, and interest and attorney's fees, which were executed by the appellant D. B. Smith to W. H. Reinhart for the purchase money agreed by appellants to be paid for certain tracts of land, and to foreclose a mortgage deed of trust executed by D. B. Smith and his wife, Gertrude W. Smith, to secure the payment of said notes, of even date with said

notes, and conveying in trust to F. P. Zollinger the said tracts of land for the purchase price of which said notes were executed.

The defendants answered said complaint, pleading among other things, illegality of the notes and deed of trust, in that the land sold by W. H. Reinhart to D. B. Smith for which the notes were executed, and to secure the payment of which D. B. Smith and wife executed the deed of trust sued on, was, at the time of said transaction, public land of the United States, and that exclusive possession, use and claim of ownership was taken and asserted by said Reinhart and transferred to said Smith, who accepted such exclusive possession, use, and claim of said land, when, in fact, neither said Reinhart nor said Smith held the same under color of title in good faith, or with a view to entering the same under the laws of the United States at the proper land office.

The plaintiffs demurred to said plea of illegality, and, the court having sustained such demurrer in so far as the plea applied to the deed of trust sought to be foreclosed, and the defendants not having asked leave to amend or having filed any amended answer, the court rendered judgment foreclosing the deed of trust sued on, and ordering sale of land described therein to realize money to pay the amount due on said notes.

Defendants appealed from the judgment to this court, which reversed the judgment of the court below, and remanded the cause for a new trial. The case is reported in 17 N. M. 166-188, 125 Pac. 632.

After the mandate of this court was filed in the court below, the defendants filed in the district court their first amended answer, wherein they pleaded illegality, as before, and pleaded the facts intended to negative all good-faith holding by said Reinhart and said defendant D. B. Smith of said public land, and also pleaded an estoppel on the part of said Reinhart and the plaintiff holders of the notes sued on to plead in this case a good-faith holding of said land or of said notes, in that in the years 1891-93, in a suit brought by the Grant of the Colony of Refugio, a corporation in the United States Court of Pri-

vate Land Claims, wherein said corporation lawfully rep-
resented all the parties interested in said grant, and espe-·
cially the remote grantor of plaintiffs, Leon Alvares, who
was named in the act of incorporation of said grant as a
member thereof, there was a judgment rendered estab-
lishing the boundaries of said colony grant in such man-
ner as to exclude therefrom the land described in said
notes and in said deed of trust, whereby said land not
being covered, or claimed to be covered, by any other grant
from any sovereignty of the soil, was shown to be public
land of the United States, and that no appeal was prose-
·cuted from said judgment, and the ·same became final and
binding in said matters; of which decree the said Rein-
hart and D. B. Smith had knowledge when said Reinhart
·conveyed said land and delivered exclusive possession and
use thereof to D. B. Smith, and when D. B. Smith ac-
·cepted the same and executed the notes and deed of trust
·sued on, and that the plaintiff bank and F. P. Zollinger,
trustee for said bank, each, at the time said notes were
indorsed to them, had knowledge of said judgment, and
·of the fact that said land was public land of the United
States, and was not held under color of title in good faith
or with a view to entering the same under laws of the
United States, wherefore the act of Congress of the Unit-
ed States of 1885, forbidding and penalizing occupancy
·of public land and the public policy of said act forbade
any plea of good-faith holding by those having knowledge
of such adjudication.

The defendants further pleaded that there was no valu-
able consideration moving between said Reinhart and D.
B. Smith and his wife, Gertrude W. Smith, to create any
legal obligation on their part to pay said notes or to sup-
port said deed of trust as security, in that the said Rein-
hart had no title or right of possession in said land, and
·could not vest said Smith with any rightful possession of
said land, all of which was known to the plaintiff bank
when it accepted indorsement of said notes to it for value,
for which want of consideration under the laws of Texas
pleaded by ·defendants, where said notes were executed,

and which were made payable in El Paso, Tex., they were unenforceable for want of a valuable consideration to support them.

Plaintiffs filed their reply to defendants' amended answer, alleging, among other replies, that Reinhart was, at the time he conveyed to appellant D. B. Smith, in actual possession of the land, "and claiming the same in good faith under deeds and mesne conveyances and under color of title theretofore acquired in good faith and for value," and then proceed to set out with particularity the several deeds and conveyances under which Reinhart claimed the land, commencing with a deed from one Allen Potter to him (Reinhart) of date January 25, 1909, and running back to a number of deeds from the commissioners of the colony of Refugio to the various grantees of said colony under whom he (Reinhart) claimed title; the deeds from said commissioners of said colony to their immediate grantors all being dated in and about the year 1888, some three years prior to the act of Congress creating the Court of Private Land Claims.

> "And plaintiffs say that each and all of said deeds constituted a valid claim and color of title to said lands, and that under the same the respective grantees acquired, and thereafter, until the same had been conveyed by deed to their respective grantees, as above stated, asserted claim to said lands hereinbefore described, which deeds constitute his claim and color of title thereto."

Plaintiffs in the "third" paragraph of their reply denied that Reinhart or any of his predecessors in title were in any wise parties to the suit and judgment rendered therein before the Court of Private Land Claims, and denied that he or any of his predecessors in title were in any wise bound by the judgment.

The case was tried to the court, and final judgment was rendered for plaintiffs for the debt and interest represented by the three notes, for $1,500 attorney's fees, etc., with foreclosure of the mortgage or deed of trust

lien.   Upon motion and request of defendants, the trial judge made and filed certain findings of fact.   Among other findings of fact are:

"Third.   And that said lands were for many years before and after the Mexican cession of the United States in good faith considered to be a part of the Refugio colony grant, a Mexican community grant, and were so held in good faith by the owners of the said grant; and that the commissioners of the said grant, in good faith, allotted and conveyed the said lands to certain numbers of said community who settled on the said grant; and that the titles and claims of the allottees thereto were passed and deraigned by a chain of sufficient mesne conveyance to the said W. H. Reinhart, and that the said W. H. Reinhart and his predecessors in title and claim held, occupied, and possessed the said lands for more than 15 years, under and by virtue of the conveyances from the commissioners of the Refugio colony grant and the said mesne conveyances; and that the said defendant D. B. Smith and his assigns now hold and possess and are cultivating the said lands under and by virtue of the said conveyances from the commissioners of the Refugio colony grant, and the said mesne conveyances, and the said conveyance from the said W. H. Reinhart to defendant D. B. Smith, and subsequent conveyances from D. B. Smith to his said assigns."

Upon the trial it was by stipulation agreed that:

"The plaintiffs have such deed of conveyance from the Refugio colony grant owners and mesne chain of conveyances down to W. H. Reinhart and D. B. Smith and wife as they plead in their reply and such as defendants plead that they hold under."

During the examination of a witness for plaintiffs, Dionicio Alvarez, counsel for defendants made the following "admission":

"It is admitted by the defendants, for the purpose of shortening the testimony, that the parties mentioned in the chain of transfers from the Refugio colony down to the date of the rendition of the decree of the Court of Private Land Claims in evidence were holders under the chain of title mentioned, in good faith, under color of title and in good faith."

The facts out of which this litigation arose may be briefly stated as follows:

In 1851 the government of Mexico granted certain lands now embraced within the limits of Dona Ana county, this state, to the colony of Rufugio. The grant was similar to many others found in this state. Settlements were made upon it by many people, and individual allotments were made from time to time by the commissioners. The territorial Legislature, by the act of March 7, 1884 (Laws 1884, c. 93), constituted the owners of lands within the limits of the grant a body corporate and politic under the name and style of the Grant of the Colony of Refugio, under which they were authorized by said act to sue and be sued and have perpetual succession.

Many years ago the lands involved in this litigation, embracing some 400 acres, were allotted to ten individuals, who subsequently, by separate deeds of conveyance, transferred the same to Leon Alvarez, probably some time in the 80's, but the date is wholly immaterial. From that time to 1909 various deeds were executed to divers parties, all of whom had possession of and cultivated and improved the lands; something like $6,000 or $7,000—possibly more—having been expended in improvements on the land and in constructing irrigation ditches. In 1909 W. H. Reinhart claimed to be the owner of the lands, under deeds of conveyance, and was in possession of the same. In that year he conveyed the same to D. B. Smith, the appellant here, receiving perhaps one-half of the purchase money in cash, and to secure the balance took Smith's promissory notes, secured by a mortgage on the real estate. The notes aggregated $13,500. It is not disputed that Reinhart was the owner of said lands if the

original allottees were invested with the legal title to the same.

Some time prior to 1893 the grant was surveyed by Elkins & Marmon, and the lands in question here were within the limits of that survey. In 1893 the commissioners of the grant, acting under the power and authority conferred by the act of March 7, 1884, instituted proceedings in the United States Court of Private Land Claims to have the title of said grant confirmed and settled. Leon Alvarez was one of the commissioners of the grant at that time and acting as such. The title of the grant was confirmed, and a survey was ordered to determine what lands were embraced within the limits of the same. This survey was made by the surveyor general of New Mexico, and reported to the court, and the title to the lands so embraced within the limits of such survey was confirmed in the colony of Refugio. This survey, so made as aforesaid, embraced a smaller tract than did the Elkins & Marmon survey, and the lands in question here, together with other lands, were without the limits of the survey made under the direction and by authority of the Court of Private Land Claims. The judgment of the Court of Private Land Claims establishing the boundaries and confirming the title to the lands within the limits of such survey so made by the surveyor general of New Mexico was entered in the year 1903, and from which no appeal was taken.

The parties owning land without the limits of the grant as confirmed, but within the Elkins & Marmon survey, continued in possession thereof and resided thereon with their families, and dealt with said lands as though they had been invested with the legal title to the same. No action was ever taken by the United States, so far as the record discloses, to dispossess them, although the legal title to said lands was in the United States. In 1909, when the deed to Smith was executed by Reinhart, a bill was pending before Congress to validate the titles of the bona fide claimants to said lands so found to be without the limits of the confirmed survey.

The notes and mortgage securing the same executed by Smith were transferred by Reinhart to the appellee some time in the year 1909 for value. All parties concerned were fully advised as to the condition of the title to the lands involved. Smith refused to pay the notes when they became due, and this suit was instituted by the bank to recover thereon and for foreclosure of the mortgage.

From the judgment for the amount called for by the notes and foreclosing the deed of trust, appellants prosecute this appeal.

## OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above)— When this case was before this court at a former hearing (17 N. M. 166, 125 Pac. 632), the court had for consideration only the complaint, answer, and demurrer thereto. The answer proceeded upon the theory that the notes and trust deed were illegal, in that they were made in the course of, and as a part of, a deed of sale and assertion of exclusive possession of vendor and vendee of public lands of the United States, of which appellees had notice, being parties to said illegal transaction. The answer also set up the federal statute (Act Feb. 25, 1885, c. 149, 23 Stat. L. 321, 6 Fed. Stat. Ann. 533 [U. S. Comp. St. 1913, § 4997-5002]), and alleged that the parties were holding, using, and occupying said lands in violation of the same. In holding that the answer stated a good defense we said:

> "If issue should be joined upon the allegations of the answer, and the proof should establish, as it did in the case of Tidwell v. Chiricahua Cattel Co. [5 Ariz. 352] 53 Pac. 192, that Reinhart held the land in good faith, under conveyance, he would then bring himself clearly within the doctrine laid down, and his act would not be in contravention of the act of Congress in question."

Upon this appeal, the only question which requires consideration is whether the evidence shows that Reinhart had "no claim or color of title made or acquired in good faith" to the land in question at the time he conveyed the

same. If he did not, the judgment must be reversed; on the other hand, if he had color of title to the land, made or acquired in good faith, the judgment entered was proper and must be affirmed.

The federal statute under which it is claimed Reinhart's possession and occupancy was illegal reads as follows:

"That all inclosures of any public lands in any state or territory of the United States, heretofore or to be hereafter made, erected, or constructed by any person, party, association, or corporation, to any of which land included within the inclosure the person, party, association, or corporation making or controlling the inclosure had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith, with a view to entry thereof at the proper land office under the general laws of the United States at the time any such inclosure was or shall be made, are hereby declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited; and the assertion of a right to the exclusive use and occupancy of any part of the public lands of the United States in any state or any of the territories of the United States, without claim, color of title, or asserted right as above specified as to inclosure, is likewise declared unlawful, and hereby prohibited." 23 Stat. L. 321.

The Supreme Court of the United States, in the case of Cameron v. United States, 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459, construed this section of the statute, saying:

"The act of Congress which forms the basis of this proceeding was passed in view of a practice which had become common in the Western territories of inclosing large areas of lands of the United States by associations of cattle raisers, who were mere trespassers, without shadow of

title to such lands, and surrounding them by barbed-wire fences, by which persons desiring to become settlers upon such lands were driven or frightened away, in some cases by threats or violence. The law was, however, never intended to operate upon persons who had taken possession under a bona fide claim or color of title; nor was it intended that, in a proceeding to abate a fence erected in good faith, the legal validity of the defendant's title to the land should be put in issue. It is a sufficient defense to such a proceeding to show that the lands inclosed were not public lands of the United States, or that defendant had claim or color of title, made or acquired in good faith, or an asserted right thereto, by or under claim made in good faith, with a view to entry thereof at the proper land office under the general laws of the United States. As the question whether the lands enclosed by the defendant in this case were public lands of the United States depends upon the question whether he had claim or color of title to them, the two questions may be properly considered together."

The deed from Potter to Reinhart constituted color of title, so that the only question of any practical importance for determination is whether Reinhart's title was acquired and held in good faith, within the meaning of the act of Congress. The purpose in view by Congress in enacting the statute is clearly pointed out by the United States Supreme Court in the foregoing quotation. It was never intended to operate upon persons who took and held possession of government land under a bona fide claim or color of title, as pointed out by that court.

[1] In the same case the court says:

"Color of title exists wherever there is a reasonable doubt regarding the validity of an apparent title, whether such doubt arises from the circumstances under which the land is held, the

identity of the land conveyed or the construction
of the instrument under which the party in pos-
session claims his title."

[2]    And in the case of Searl v. School District, 133
U. S. 553, 10 Sup. Ct. 374, 33 L. Ed. 740, Chief Justice
Fuller for the court said:

"As remarked by Beckwith, J., in McCagg v.
Heacock, 34 Ill. 476, 479 [85 Am. Dec. 327]:
'The good faith required by the statute, in the
creation or acquisition of color of title, is a free-
dom from a design to defraud the person having
the better title,' and 'the knowledge of an ad-
verse claim to or lien upon, property, does not, of
itself, indicate bad faith in a purchaser, and is
not even evidence of it, unless accompanied by
some improper means to defeat such claim or
lien.'"

[3]    Tested by this rule, in connection with the evi-
dent purpose of the statute, do the facts in this case bring
Reinhart without the rule?

It is true he was fully conversant with all the facts re-
garding the status of his title.   He knew that his lands
were not within the confirmed portion of the Refugio col-
ony grant, but that the same were within the Marmon &
Elkins survey, and claimed by his grantors, and others
similarly situated, to have been within the limits of the
original grant, as made by the Mexican government.   It
is probably true that he, as well as the other claimants,
were legally precluded from asserting title thereto as
against the United States, but, in view of the policy of
Congress in disposing of public lands, we do not think
that it can be contended that the people who had estab-
lished homes and settlements upon the allotments made
by the commissioners of the grant, which said allotments
were of small tracts of land, could be said to be acting in
bad faith in holding possession of said lands after the
confirmation of said grant and the approval of the sur-
vey, even though their lands were not within the con-
firmed portions of the same.   It has been the policy of
Congress to encourage citizens to establish their homes

upon, improve, and cultivate land, and increase the material wealth of the country. These people had all acted in good faith, and in full reliance upon the validity of their titles. In the present case much money had been expended in improving the land and bringing it under cultivation. Under the facts in this case it would be a violent presumption, we believe, to assume that the national government would oust these bona fide settlers from the lands in question, take from them their homes, and deprive them of the usufruct of years of toil and labor. Nor is it any evidence of bad faith on their part that they continued to reside upon the lands, assuming that they knew the legal title to the same rested in the United States government. While Reinhart may have been within the strict letter of the statute (act of Congress supra), he was not within its spirit.

Smith, the appellant, testified on the witness stand that he or his grantees were now in possession of the land, claiming to own it. While thus holding possession and enjoying the benefits of the property he obtained from Reinhart, and refusing to restore to him the title and possession of the same, he seeks to avoid liability for the balance due. Fortunately, under the facts in the case, the law will not permit him to do this.

The judgment of the trial court will be affirmed; and it is so ordered.

HANNA, J., and ABBOTT, District Judge, concur.