(No. 2007.   January 7, 1918.)

## ROBINSON v. SAWYER.

(Rehearing Denied February 23, 1918.)

### SYLLABUS BY THE COURT.

1. The transcribed notes of the stenographer, certified by the trial court, under the provisions of section 4493, Code 1915, must be filed in the office of the clerk of the district court, and by such clerk included in the "transcript of record," and properly certified to by such clerk, and attested by the seal of the court; otherwise they cannot be considered by the Supreme Court.                     P. 691.

2. A holder of color of title to a small tract of government land embraced within the limits of the original survey of a Mexican land grant, which was without limits of such grant as finally confirmed by the Court of Private Land Claims, who had, or whose predecessors in title had, expended large sums in improving the land, and, where the original allotment of said land and the settlement and improvements thereon had been made in good faith, has "claim or color of title made or acquired in good gaith" within the spirit of Act Cong. Feb. 25, 1885, c. 149, 23 Stat. 321 (U. S. Comp. St. 1913, §§ 4997-5002).   Hence a contract for the sale of said land is not an illegal contract, and the fact that such grantor received his confirmatory deed from the corporation, created by the Legislature to carry out the purpose of the grant, after it was definitely known that the land thereby granted and confirmed by such deed was without the limits of the confirmed portions of the grant, does not change or alter his status.   The case of Third National Exchange Bank v. Smith, 20 N. M. 264, 148 Pac. 512, followed.
                                        P. 693.

Appeal from District Court, Dona Ana County; Medler, Judge.

Action by Louis L. Robinson, as administrator de bonis non of the estate of John Kingston, deceased, against William L. Sawyer. Decree for plaintiff, and defendant appeals. Affirmed.

Holt & Sutherland, of Las Cruces, for appellant.

Contract was void. Bank v. Smith, 17 N. M.; Fed Stats. Ann. 533; Camfield v. U. S., 167 U. S. 518; Schwanger v. Mearbry, 59 Cal. 91; Combs v. Miller, 103 Pac. 590; McLaughlin v. Ardmore L. & T. Co., 95 Pac. 779; Garst v. Love, 55 Pac. 19; Chaffee v. Garrett, 16 Ohio 421; Jarvis v. Campbell, 23 Kas. 370; Tandy v. Elmore Cooper L. S. C. Co., 113 Mo. App. 409; Levison v. Ross, 12 L. R. A. (N. S.) 575, and extended note.

As too good faith, party knowing he has no title, see: Vilas v. Prince, 88 Fed. 682; Diffenbock v. Hawks, 115 U. S. 398; Lindt v. Uihleen, 89 N. W. 214; Reay v. Butler, 95 Cal. 206, 30 Pac. 208; Crespin v. Hannavan, 50 Mo. 536; Saxton v. Hunt, 20 N. J. Law 487; Foulke v. Bond, 41 N. J. Law 527; Moore v. Browne, 11 Howard 414, 13 Law 751; Eberts v. Thompson, 16 Wisc. 91; Mosley v. Miller, 13 Bush 408; Linthicum v. Thomas, 59 Md. 583.

Sale by private parties of unappropriated public domain furnishes no consideration for the contract. Rayner Cattle Co. v. Bedford, 91 Tex. 642, 44 S. W. 410, 45 S. W. 554; Lamb v. James, 87 Tex. 485, 29 S. W. 647.

Wade & Taylor, of Las Cruces, and R. L. Nichols, of El Paso, Texas, for appellee.

Transcribed notes of stenographer are not filed and therefore are no part of record. Wade's App. Pro. Sec. 404; State ex rel Baca v. County Commsrs. 21 N. M. 713.

As to title see: Third Nat. Bank v. Smith, 17 N. M. 166, 20 N. M. 264; 27 Cyc. 1153, 1154 and 1155.

## OPINION OF THE COURT.

ROBERTS, J.   This action was instituted in the court below by appellee against appellant to recover upon certain promissory notes and to foreclose a mortgage securing same.   Appellant interposed as a defense absence of consideration and illegality of contract, by reason of the fact that the payee of the notes, who was the mortgagee, had no good-faith claim to the lands involved in the suit, and unlawfully asserted possession thereof.   The facts relied upon as a defense were substantially the same as those pleaded and relied on in the case of Third National Exchange Bank v. Smith, 20 N. M. 264, 148 Pac. 512, with possibly one distinguishing feature, i. e., in that case the ''Grant of the Colony of Refugio'' executed a confirmatory deed prior to the survey made under the direction of the United States Court of Private Land Claims, while in this case the deed was made after such survey, and on, to wit, June 12, 1908.   The real estate here involved, like that involved in the Smith Case, was within the limits of the original survey by Elkins and Marmon, but was without the survey later made under direction of the Court of Private Land Claims.   In 1911 Kingston sold the land to Sawyer, warranting the title as against all the world except the United States.   Sawyer was fully aware of the status of the title at the time he bought, and knew that the land was without the confirmed portion of such grant. To secure the purchase price, or at least a part of it, he executed the notes and mortgage in question.   It is unnecessary to further state the facts, as by a reference to the Smith case, supra, and the facts here stated, a clear understanding of the controversy is presented.   In his reply to appellant's answer, plaintiff set up the fact that he and his predecessors in title had held and occupied the premises in question in good faith under color of title for many years prior to 1908.   A stipulation of facts was signed by the

parties and filed in the clerk's office, in which it was stipulated that appellee received the deed from the grant of the colony of Refugio, in 1908, but no facts were stipulated relative to other paper title under which appellee claimed, but it was agreed in the stipulation that either party might give in evidence any other fact which they deemed material and which was properly admissible. The court made certain findings of facts, upon which conclusions of law were stated, and judgment was rendered for appellee for the amount called for by the notes, and a decree was entered foreclosing the mortgage. Certain requested findings proposed by appellant were refused and likewise conclusions of law.

[1] . The first question properly to be determined is whether the transcribed notes of the stenographer certified to by the court, under section 4493, Code 1915, are a part of the record and here for consideration. The record proper is certified to by the clerk of the district court in proper form. Following this is what purports to be the transcribed notes of the stenographer certified to by the trial court as being true and correct, but this latter document, and the evidence to which it is appended, is not shown to have been filed in the office of the clerk of the district court, and is not certified by such clerk as being part of the record in the case. Appellant contends that under the statute the certificate of the clerk, attested by the seal of the court, is unnecessary, but this conetntion is at variance with prior decisions of this court. Such decisions, it is true, did not involve the transcribed notes of the stenographer perfected under such section 4493, but passed upon the necessity of the clerk's certificate to the bill of exceptions under section 4495, Code 1915. However, if the bill of exceptions, in order to become a part of the record and subject to review here, must be certified to by the clerk of the district court and attested by the seal of the court, the same would be true as to the transcribed notes of the stenographer and certificate of the trial

judge under section 4493, as there is no distinction in principle.

In the case of City of Tucumcari v. Belmore, 18 N. M. 331, 137 Pac. 585, we held that where the certificate of the trial judge to an alleged bill of exceptions is not certified to by the clerk of the court and is not· shown to have been filed in the clerk's office, neither the alleged bill of exceptions to which it relates nor the said certificate will be considered by this court.

In the case of State ex rel, Baca v. Board of Commissioners, 21 N. M. 713, 158 Pac. 642, this court discussed in detail the proper manner of making the bill of exceptions a part of the record and set out a form for clerks of the district courts to follow in such matters, so that all possibility of having purported bills of exceptions stricken from the transcript would be obviated. It does not require much argument to establish the proposition that the transcribed notes of the stenographer, certified to by the trial court, must befiled in the office of the clerk of the district court and by such clerk incorporated into the transcript of the record, and certified to by such clerk as being a part of the record, which certificate must be attested by the seal of the court. Papers only become a part of the record by being filed in the office of the clerk of the district court. The clerk of the district court is not authorized to transmit to this court the original records of his office, where an appeal has been taken or a writ of error sued out. By section 4492,Code 1915, he is required, where proper præcipe is filed, to make out and prepare a transcript of the record, This transcript of the record is, of course, a copy of the files, docket entries, and records in his office, pertaining to the case, called for by such præcipe. Under section 4493, in a case tried without a jury, the tran-scribed notes of the stenographer, certified by the court or referee, etc., "shall become and be a part of the record for the purpose of having the cause reviewed by the Supreme Court." This language does not mean that the notes of the stenographer, thus

transcribed and certified, shall become a part of the record in the Supreme Court, but a part of the record of the case in the district court. In other words, such transcribed notes certified as required, are a part of the record of the cause in the district court, and are to be included in the "transcript of the record" which the clerk prepares and certifies, in the same manner as other portions of the record of the cause are transcribed and certified.

While the statute in express terms does not require the filing in the clerk's office of either the bill of exceptions or the transcribed notes of the stenographer properly certified to necessarily such papers must be filed in the clerk's office in order to become a part of the record. If this is not required, it would be possible for a party desiring to appeal to file in this court a purported transcript of the evidence or bill of exceptions which might or might not be signed by the judge, as it would be proved only by the signature of the trial judge, with which the members of this court might not be familiar. The proof of the bill of exceptions or transcribed notes of the stenographer, certified as aforesaid, is established by the signature of the clerk of the district court attested by the seal of the court.

For the foregoing reasons the proceedings occurring upon the trial of this case cannot be considered. This being true, the findings of fact made by the trial court must be accepted as true and as fully warranted by the facts established by the evidence.

[2]   In view of the state of the record, there is one question only which requires consideration other than the points presented and determined in the case of Smith v. Bank, supra; that is, whether the fact that the confirmatory deed was made by the grant of the colony of Refugio on June 12, 1908, after it had been definitely determined by the Court of Private Land Claims that the land which it purported to confirm was without the limits of the confirmed grant differentiates this case. This question, we believe, is disposed of by the reasoning in the Smith case. In that case Potter

conveyed to Reinhart after it had been definitely determined that the land so conveyed was without the limits of the grant and Reinhart had conveyed to Smith thereafter. All parties knew that the legal title to the land was vested in the United States, and that without relief by Congress the grantee could not hope to retain the land. There, as here, valuable improvements had been made upon the land, and it had been claimed and occupied for years. In that case we held that the deed from Potter to Reinhart constituted color of title, and here the confirmatory deed from the grant of the colony of Refugio likewise constituted color of title, and apparently, or at least it was so alleged in the reply, Kingston—

"by and through himself and his predecessors in interest long prior to the survey last mentioned in good faith under color of title entered into possession of the said premises, and resided continuously thereon in good faith until the making of the survey last aforesaid, and thence, until the making of the conveyance to defendant referred to in said answer, continued to reside on said premises in good faith under color of title," etc.

The deed or deeds to Kingston constituted color of title, and the one question here for determination, as it was in the Smith case, was whether such title was acquired and held in good faith, within the meaning of the act of Congress (23 Statutes at Large, 321), making it a penal offense to inclose public lands where the party so doing "had no claim or color of title made or acquired in good faith, or an asserted right thereto by or under claim, made in good faith, with the view of entry thereof at the proper land office under the general laws of the United States." In the Smith case we quoted the following excerpt from the case of Searl v. School District, 133 U. S. 553, 10 Sup. Ct. 374, 33 L. Ed. 740:

"As remarked by Beckwith, J., in McCagg v. Heacock, 34 Ill. 476, 479, 85 Am. Dec. 327: 'The good faith required by the statute, in the creation or acquisition of color of title, is a freedom from a design to defraud the person having the better title,' and 'the knowledge of an adverse claim to or lien upon property does not, of itself, indicate bad faith in a purchaser, and is not even evidence of it. unless accom-

panied by some improper means to defeat such claim or lien.' "

—and, held that Reinhart was holding the land in question under color of title made or acquired in good faith. We said in that case:

"It is true that he was fully conversant with all the facts regarding the status of his title. He knew that his lands were not within the confirmed portion of the Refugio colony grant, but that the same were within the Marmon & Elkins survey, and claimed by his grantors, and others similarly situated, to have been within the limits of the original grant, as made by the Mexican government. It is probably true that he, as well as the other claimants, were legally precluded from asserting title thereto as against the United States, but, in view of the policy of Congress in disposing of public lands, we do not think that it can be contended that the people who had established homes and settlements upon the allotments made by the commissioners of the grant, which said allotments were of small tracts of land, could be said to be acting in bad faith in holding possession of said lands after the confirmation of said grant and the approval of the survey, even though their lands were not within the confirmed portion of the same. It has been the policy of Congress to encourage citizens to establish their homes upon, improve, and cultivate land, and increase the material wealth of the country. These people had all acted in good faith, and in full reliance upon the validity of their titles. In the present case much money had been expended in improving the land and bringing it under cultivation. Under the facts in this case it would be a violent presumption, we believe, to assume that the national government would oust these bona fide settlers from the lands in question, take from them their homes, and deprive them of the usufruct of years of toil and labor. Nor is it any evidence of bad faith on their part that they continued to reside upon the lands, assuming that they knew the legal title to the same rested in the United States government. While Reinhart may have been within the strict letter of the statute (act of Congress supra), he was not within its spirit."

Our decision in that case was approved by the Supreme Court of the United States, 244 U. S. 184, 37 Sup. Ct. 516, 61 L. Ed. 1071, that court saying:

"Without doubt Reinhart and his predecessors were upon the lands for more than fifteen years; and it is admitted that prior to entry of the decree of the Court of Private Lands Claims in 1903, their occupancy was under color of title and in good faith. We cannot conclude that further occupancy by these then in possession under bona fide claims, or their vendees, was rendered unlawful—criminal indeed—by the act of 1885. They were not mere naked

trespassers, dishonestly seeking to appropriate public property, and they did not belong to that class of offenders intended to be hit by the act. Their claim deserved consideration, as plainly appears from the circumstances above narrated."

From the foregoing we conclude that Kingston was not a mere naked trespasser, and that he did not belong to the class of offenders against whom the act of Congress was directed.

We do not attach any importance to the fact that Sawyer was unable to secure confirmation under the act of Congress approved February 3, 1911 (36 Statutes at Large, 896 c. 35), as that statute had no influence upon decisions of the Smith case.

For the reasons stated, the judgment of the court below will be affirmed; and it is so ordered.

HANNA, C. J., and PARKER, J., concur.