410 P.2d 956

Joseph PALMER, Miles Palmer, Frank Palmer and Paul B. Palmer, Plaintiffs-Appellants,

v.

The DENVER & RIO GRANDE WESTERN RAILROAD COMPANY, a Colorado Corporation, Defendant-Appellee.

No. 7709.

Supreme Court of New Mexico.

Feb. 7, 1966.

Rueckhaus & Brown, Albuquerque, Palmer & Frost, Farmington, for appellants.

Tansey, Wood, Rosebrough & Roberts, Farmington, for appellee.

MOISE, Justice.

Plaintiffs seek to quiet title under the provisions of § 23–1–22, N.M.S.A.1953, to a strip of land one hundred feet in width running through lands owned by them. Defendant railroad denies plaintiffs' title and asks to quiet title to the same strip in a cross complaint filed by it.

The facts as found by the court, after sustaining a motion to dismiss plaintiffs' complaint at the close of their evidence, show that in 1905 the strip of land in question was conveyed to Denver & Rio Grande Railroad Company and thereafter, in 1947, conveyed by it to the defendant, Denver & Rio Grande Western Railroad Company. This land is within the boundaries of a tract which was conveyed to Frank Palmer in 1947. The conveyance to Frank Palmer specifically excepted the strip of land previously conveyed to the railroad company as not being included. However, the strip was used by Frank Palmer along with the remainder of the property, as it had been by his predecessors. On January 25, 1952, Frank Palmer conveyed the entire tract, including the 100 foot strip, to his mother Camera Palmer, and on February 1, 1952, Camera Palmer conveyed the identical property to Frank Palmer and his three brothers, the plaintiffs herein, in certain shares. The conveyance to Camera Palmer, and by her to plaintiffs, was without consideration and for the purpose of getting record title in the proper undivided interests into plaintiffs. For more than ten years after 1952, plaintiffs retained possession and rendered the property for taxes, and paid the taxes thereon. The court concluded, however, that plaintiffs did not have possession of the strip under color of title in good faith for ten years and refused to quiet title in them. It did quiet the title in defendant railroad.

The crucial question presented by the appeal is whether color of title, created as it was in this case by the parties themselves, can serve as a basis for title under § 23–1–22, supra, which bars any action against those who have held "adverse possession continuously and in good faith under color of title for ten (10) years of any lands * * *" without a claim thereto having been effectively prosecuted by the claimants out of possession. "'Adverse possession' is defined to be an actual and visible

appropriation of land, commenced and continued under a color of title and claim of right inconsistent with and hostile to the claim of another."

Plaintiffs complain principally that by their evidence they had established by prima facie evidence all the material facts required by the statute to support a decree quieting title by adverse possession, and that accordingly the court erred in sustaining the motion to dismiss at the close of their case. They enumerate certain elements required to establish title by adverse possession but, in the light of the court's findings and conclusions referred to above, it is necessary that we note and discuss only the requisites of proof to show possession in good faith and under color of title.

■ In passing on the motion made at the close of plaintiffs' case, the court had the right to weigh the evidence presented and determine whether a prima facie case was established thereby. Blancett v. Homestake-Sapin Partners, 73 N.M. 47, 385 P.2d 568; Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824; Hickman v. Mylander, 68 N.M. 340, 362 P.2d 500. We proceed to point out wherein the proof clearly fell short of what may be described as the minimum requirements to establish good faith in possession and in acquisition of color of title.

First, we would discuss the requirements of good faith. It is plaintiffs' position that the good faith required by the statute is only good faith possession, whereas defendants assert that the possession in good faith must be under color of title, and that under the proof here, possession originally was without color of title and thereafter color of title was created by the conduct of the plaintiffs, and accordingly was not in good faith.

We quote the following discussion of the phrase and its meaning under our statute from Thurmond v. Espalin, 50 N.M. 109, 115, 171 P.2d 325:

"* * * We are now concerned with what constitutes good faith by one who invokes Sec. 27–121, 1941 Comp., [§ 23–1–22, N.M.S.A.1953] which requires broadly that adverse possession must be in good faith.

The question of what constitutes good faith is discussed in 2 C.J.S., Adverse Possession, § 170. Fortunately, in a case involving a Federal Statute of sufficient analogy to be useful, the trail has been blazed by our court to a considerable extent for correct understanding of the meaning of the phrase good faith. In Third Nat. Exch. Bank v. Smith, 20 N.M. 264, 148 P. 512, affirmed 244 U.S. 184, 37 S.Ct. 516, 61 L. Ed. 1071, it was decided: ' "Good faith," in the creation or acquisition of color of title, is freedom from a design to defraud the person having the better

title and the knowledge of an adverse claim to or lien upon property does not, of itself, indicate bad faith in a purchaser, and is not even evidence of it, unless accompanied by some improper means to defeat such claim or lien.' "

It was further held that the fact that a person was aware of outstanding claims did not prevent title from ripening by adverse possession. This was repeated in Witherspoon v. Brummett, 50 N.M. 303, 176 P.2d 187.

Thurmond v. Espalin, supra, also stated that bad faith would not be presumed; that the color of title of one claiming by adverse possession would be presumed to have been acquired in good faith.

■ While giving full recognition to the rules just noted, we encounter no difficulty in concluding that there was no error in the court's action in dismissing plaintiffs' complaint at the close of their case. Frank Palmer, one of the plaintiffs, and the one who lived on the premises and to whom the property had been conveyed in the first instance, testified that the land here in question was excepted from the original grant to him, but that this exception was not included in the deed to his mother. He added that he did not believe that he received any consideration from his mother for the land transferred to her, and that he gave her no consideration when she deeded the land back to the four brothers.

From this testimony we think it was entirely reasonable that the court should determine that one of the purposes of the conveyances to Camera Palmer and back to the plaintiffs was to establish ostensible color of title where none previously existed. This is entirely different from taking a conveyance of an estate knowing of some possible outstanding claim, and goes directly to the good faith of the grantee. The finding and conclusion of the court that there was an absence of good faith were not based upon a presumption to this effect, but upon substantial evidence. In this connection we would call attention to Apodaca v. Hernandez, 61 N.M. 449, 302 P.2d 177, where claimant originally entered into possession permissively and thereafter, through acts of the person in possession, color of title by way of a tax deed was obtained. It was held that the method employed in getting color of title would not support a claim under color of title made in good faith, and could not serve as a basis for application of the statute of limitations. The case goes further and states that where a conveyance which furnishes claimed color of title is created and obtained with knowledge of its invalidity by one claiming title by adverse possession, there is an absence of that good faith required by the statute. See "Adverse Possession in New Mexico" (Part II) by Professor Verle R. Seed, 5 Nat.Res.J. 96, 113; Bell v. Bell, 159 La. 460, 105 So. 509. This we believe to be the implicit meaning

of the trial court's findings of fact and conclusion of law.

**▇▇** In Thurmond v. Espalin, supra, it was said that when the court found that claimant had been in "adverse possession" of the land, all of the elements required by statute as a basis therefor, including good faith, were necessarily included. The converse is true here. Having concluded that plaintiffs did not have "possession under color of title in good faith" there can be no question that from the facts it was determined that there was an absence of good faith and, as already pointed out, the evidence amply supports the findings.

In view of the conclusion reached on this portion of plaintiffs' claim, it becomes unnecessary to consider the additional elements required to be proved under the statute. Neither do we consider it material that the court may have erroneously considered that the plaintiffs had the burden of proving the absence of certain facts. Without possession under color of title in good faith there could be no title by adverse possession. Apodaca v. Hernandez, supra. It follows that the court did not err in dismissing plaintiffs' complaint at the close of their case. For the same reason, plaintiffs may not be heard to complain of the court's action in quieting title in defendants. Plaintiffs must prevail, if at all, only on the strength of their own title, and not on the weakness of the title of defend-ants. Rock Island Oil & Refining Co. v. Simmons, 73 N.M. 142, 386 P.2d 239; Ronquillo v. Sandoval, 71 N.M. 459, 379 P.2d 611.

The judgment appealed from is affirmed. It is so ordered.

NOBLE and COMPTON, JJ., concur.