66 P.3d 326 (2003)
133 N.M. 553
2003-NMSC-008
In the Matter of the ESTATE of Salome DURAN, deceased,
Evilia Madrid and Cinesio Sanchez, Petitioners-Petitioners,
v.
Grace Rodriguez, personal representative, and Joe Gallegos, Respondents-Respondents.
No. 27,399.
Supreme Court of New Mexico.
March 7, 2003.
*328 Ruben Rodriguez, Santa Fe, NM, Edward F. Benavidez, Albuquerque, NM, for Petitioners.
Emery Law Firm, P.C., Kelan Emery, Taos, NM, for Respondents.

OPINION
MINZNER, Justice.
{1} Petitioners Evilia Madrid and Cinesio Sanchez appeal from a memorandum opinion of the Court of Appeals affirming an adverse decision and order of the district court. See Madrid v. Rodriguez (In re Estate of Duran), No. 21,384 (N.M.Ct.App. Feb. 13, 2002). The district court ruled that Petitioners have no interest in a tract of real property claimed by the estate of their deceased brother Salome Duran, and that they therefore are not *329 entitled to the remedy of a constructive trust, because Decedent had acquired title to all of the property through adverse possession. The Court of Appeals rejected Petitioners' arguments that Decedent's possession of the property had been as a cotenant and therefore was not the kind of possession the statute requires, and that he lacked good faith color of title, as required by NMSA 1978, § 37-1-22 (1973). We hold that the evidence at trial failed to support the estate's defense to Petitioners' motion for a constructive trust, based on a claim that Decedent acquired title to the tract by adverse possession. Two elements required by the statute are missing: hostile possession and color of title. We therefore reverse the district court and the Court of Appeals and remand for proceedings consistent with this Opinion.

I
{2} We take the following facts from the findings of the district court and the briefs of the parties. Macarita Sanchez, Petitioners' and Decedent's mother, owned the subject property at the time of her death in 1932. Her estate was never probated, but she was survived by five children, including Donaciana Duran Gallegos, age 22 at the time, Salome Duran, age 20 at the time, Felipe Duran, age 18 at the time, Evilia Duran Madrid, and Cinesio Sanchez. There is some discrepancy in the record as to the exact ages of Evilia and Cinesio, but they were both under age 14 at the time. Sometime between their mother's death and 1936, some or all of Macarita's children orally agreed to divide the subject property among themselves, into five equal parcels of approximately 2 1/4 acres each, with the eldest child taking the southernmost parcel, and succeeding parcels going to the remaining children in order of age, from south to north. Cinesio, the youngest of the siblings, and Evilia, the second youngest of the siblings, were minors at the time of this agreement.
{3} Taos County assessed the property in five parcels for taxation purposes according to the agreement between the siblings. In 1936, however, taxes on the subject property went unpaid. The County took the property due to this delinquency, and eventually conveyed it to the State of New Mexico in 1940. Two of the siblings, Evilia and Decedent, redeemed the 2 1/4 acre parcels previously assessed to them. Another party, Fortunato B. Martinez, purchased the parcel previously assessed to Donaciana from the State Tax Commission as well. An order was entered in 1973, Taos County Cause No. 4562-A, which set aside the tax deeds previously assessed to Felipe and Cinesio, because they contained insufficient legal descriptions.
{4} The district court found that Decedent had continuous and exclusive possession of the entire tract of land and paid all taxes for the property from 1945 until his death. Evidence was presented that all of the siblings entered into an agreement that Decedent could possess the property in exchange for paying the taxes. The district court did not state whether it accepted this evidence as true or not.
{5} Petitioners claim, and the district court found, that they attempted to confirm the Decedent was holding the property for their benefit. Although Decedent never outright told them that he claimed the property as his own, he did avoid answering their inquiries. After having possessed the property and having paid the taxes thereon for some 33 years, Decedent conveyed the property in joint tenancy through a deed to himself and his wife, Elizaida Duran, in 1978. This deed was filed in the Taos County public records in January 1978. Elizaida preceded Decedent in death. Decedent died on March 22, 1998.
{6} In his will, Decedent named his niece, Grace G. Rodriguez (Respondent), as his sole heir and personal representative of his estate. The probate court entered an order for informal probate of the will and appointed Respondent as personal representative on April 21, 1998. After Petitioners claimed an interest in a portion of the estate,[1] by motion *330 for a constructive trust in their favor, the probate court transferred this action to the district court for formal probate. The will includes a provision that recites Decedent owned in fee simple "a house and 11.18 acres situate in El Salto, Arroyo Seco, Taos County, New Mexico," which is the subject of this dispute.
{7} The Court of Appeals upheld the district court's ruling that Decedent had obtained title to the entire tract through adverse possession. Petitioners argued that the 1978 deed conveying the property from Decedent to Decedent and his wife could not constitute good faith color of title. The Court of Appeals disagreed, however, and concluded that the evidence did not compel a finding of bad faith or fraud on Decedent's part. Petitioners further argued that Decedent occupied the land permissively, and never communicated his hostile intent toward them as cotenants. The Court of Appeals agreed that Decedent never affirmatively gave notice of hostile intent, but concluded that this was not necessary, because the land had been partitioned and the siblings were not cotenants. We granted certiorari, and now resolve the appeal by opinion. We note the significance of the doctrine of adverse possession in clarifying title in New Mexico. See generally White, Koch, Kelley & McCarthy, Attorneys at Law & N.M. State Planning Office, Land Title Study 202-03 (1971) (recommending repeal of Section 23-1-22 and adoption of a proposed Real Property Limitations Act in order to liberalize the requirements for adverse possession).

II
{8} Our adverse possession statute, Section 37-1-22, sets forth several requirements that one must satisfy to make a successful claim. Specifically, "[a] party claiming ownership of land by adverse possession must prove by clear and convincing evidence continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years." Williams v. Howell, 108 N.M. 225, 227, 770 P.2d 870, 872 (1989). "Adverse possession laws are a valuable supplement to the recording acts because they operate to extinguish record defects and contribute to the quieting of titles." Land Title Study, supra, at 202; see also 16 Richard R. Powell, Powell on Real Property § 91.01[2], at 91-5 to 91-6 (Michael Allan Wolf ed., Rel. 89, 1999). Petitioners here only challenge two of the statutory elements. They claim that Decedent's possession was not hostile, but permissive, and that Decedent did not have color of title in good faith. We consider each in turn, and we conclude that under our statute and the case law interpreting that statute, both elements were lacking. Therefore, the district court erred in denying Petitioners' motion based on its conclusion that Respondent had established Decedent's title by adverse possession.
{9} Our analysis is informed by the unique framework of adverse possession law, incorporating both statutory and case law requirements:
[Adverse Possession] statutes are complemented and amplified by a large body of case law that elaborates on the kind of possession by another that is sufficient to cause the statutory period to begin to run, and to continue running, against the true owner. Thus, the law of adverse possession is a synthesis of statutory and decisional law.
16 Powell, supra, § 91.01[1], at 91-4. Our analysis is also informed by the unique nature of our statute, which requires "color of title" as well as "good faith."

A
{10} The rule as to notice of hostile possession is different as between cotenants than it is as between strangers. See generally W.W. Allen, Annotation, Adverse Possession Between Cotenants, 82 A.L.R.2d 5, 22-24 (1962) (discussing the requirement of knowledge or notice). In the typical adverse possession case, where the claimant has no legal title to the property whatsoever, that person is not required to show that he or she expressly informed the property owner of his or her adverse intent. Rather, the length and quality of the possession serve as notice. *331 See 16 Powell, supra, §§ 91.01[2], at 91-7, 91.01[4], at 91-11. If the parties are cotenants of the property, however, mere silence regarding hostile intent will not suffice. We apply a strong presumption against a cotenant's claim of hostile intent toward the other cotenants. Apodaca v. Hernandez, 61 N.M. 449, 454, 302 P.2d 177, 180 (1956). Further, we have held that:
Where possession is consistent with the rights of owners of record title, nothing but clear, unequivocal and notorious disclaimer and disavowal will render it adverse. There must be something which amounts to an ouster, either actual notice or acts and conduct that will clearly indicate that the original permissive use has changed to one of an adverse character.
Prince v. Charles Ilfeld Co., 72 N.M. 351, 359, 383 P.2d 827, 832 (1963). It is therefore critical to our analysis that we first determine whether Decedent and Petitioners were cotenants of the property.
{11} The district court determined that the oral partition agreement between the siblings did not itself effect a legal division of the property, but the division by Taos County and the State Tax Commission, coupled with the lengthy passage of time without challenge, effectively divided the property. The Court of Appeals affirmed this determination. Our cases, however, have never held that anyone other than the cotenants themselves or a court may partition their property. In the typical case, one or more cotenants will bring an action in the district court to effect a partition. See NMSA 1978, § 42-5-1 (1907).
{12} We have said that property may be partitioned by an agreement of the cotenants, orally or otherwise, so long as all of the cotenants have the capacity to contract. In Gurule v. de Chacon, 61 N.M. 488, 303 P.2d 696 (1956), we addressed a nearly identical factual situation to the one presently before us. There, three sisters inherited a tract of property from their parents. The two adult sisters orally partitioned the property, setting aside a tract for the youngest one, who was a minor at the time. The youngest sister inquired about her land, but was met with evasive answers by one of the older sisters. We held that the parol partition was invalid because the youngest sister had not reached the age of majority at that time, and she never took possession or otherwise accepted the oral agreement once she did reach that age. Id. at 489-90, 303 P.2d at 697.
{13} Similarly here, the district court found that Petitioners were both minors at the time that the siblings attempted to sever the cotenancy[2] and partition the property. Because Petitioners had not reached the age of majority, they did not have the capacity to contract. See generally Bronx Sav. Bank v. Conduff, 78 N.M. 216, 430 P.2d 374 (1967) (discussing age of majority as being 21 years of age, and the principle that contracts with minors must be ratified by the minor after attaining majority); cf. NMSA 1978, § 28-6-1 (1973) (lowering the age of majority to 18 years of age). Nevertheless, the fact that Petitioners were minors at the time of the oral contract rendered that contract voidable, rather than void. See Lopez v. Southwest Cmty. Health Servs., 114 N.M. 2, 11, 833 P.2d 1183, 1192 (Ct.App.1992) ("We recognize that generally contracts entered into by minors are voidable....").
{14} The deficiency in the oral partition agreement could have been cured if Petitioners had "take[n] possession of the tract, assert[ed] acts of ownership, or do[ne] other things denoting an acceptance of the oral agreement." Gurule, 61 N.M. at 489, 303 P.2d at 697. The district court did not make any such findings. Rather, the court concluded that the issuance of tax deeds and the lengthy passage of time without challenge *332 effectively divided the property. "We are not bound, however, by the trial court's legal conclusions and may independently draw our own conclusions of law on appeal." Strata Prod. Co. v. Mercury Exploration Co., 121 N.M. 622, 627, 916 P.2d 822, 827 (1996). The district court's conclusion was inconsistent with the requirements set forth in Gurule regarding validation of a voidable contract, and our precedent regarding the effect of the issuance of tax deeds. See Reed v. Nevins, 77 N.M. 587, 592, 425 P.2d 813, 816 (1967) (holding that a tax deed issued to an individual who owned the property as a cotenant with others prior to the tax delinquency does not destroy the cotenancy). We conclude it cannot stand.
{15} Respondent argues that the lengthy passage of time between the agreement and Petitioners' claim distinguishes this case from Gurule.[3] There, we held that "a mere lapse of time" (in that case, nearly 20 years) would not be sufficient to dissolve the cotenancy. Gurule, 61 N.M. at 490, 303 P.2d at 697. Here, the lapse of time was much greater between the agreement and this action; over 60 years have elapsed. Although in Gurule we suggested that we require a minor to affirm the contract after reaching the age of majority, we also have previously held that a minor has a reasonable time to disaffirm a contract after reaching majority. Sisneros v. Garcia, 94 N.M. 552, 553, 613 P.2d 422, 423 (1980). Under these two cases, a minor who is a party to a contract may ratify the contract in two ways, either by affirmative act, or failure to disaffirm within a reasonable time. Accord Dixon Nat'l Bank v. Neal, 5 Ill.2d 328, 125 N.E.2d 463, 467 (1955) ("A minor may disaffirm a contract made by him during minority within a reasonable time after reaching his majority or, he may by acts recognizing the contract after becoming of legal age, ratify it. Similarly it is held that an executed contract voidable on the ground of infancy is deemed to be ratified by the failure of the former infant to disaffirm it within a reasonable time after reaching majority." (citation omitted)). There is an exception to this rule, however. "[I]f the infant has obtained no benefits under the contract, ... there is no reason to bar the infant from disaffirming at any time up to the time the statute of limitations has run." Joseph M. Perillo, 7 Corbin on Contracts § 27.4, at 10 (rev. ed.2002); see Cassella v. Tiberio, 150 Ohio St. 27, 80 N.E.2d 426, 429 (1948) ("`Where an infant has received some benefit during infancy, he must repudiate the contract within a reasonable time after attaining majority.[ ] But not having received any benefit, and not having ratified the contract after his arrival at majority, he is not bound by the same.'" (quoting Brownell v. Adams, 121 Neb. 304, 236 N.W. 750, 757 (1931))). After all, there would be no reason to repudiate a contract when the party would be in the same position, whether the *333 contract remains in force or not. See generally C.T. Foster, Annotation, Failure to Disaffirm as Ratification of Infant's Executory Contract, 5 A.L.R.2d 7, 9 (1949) (discussing the effect of silence and inaction as an implied ratification of a contract entered into during infancy). Gurule is an example of an application of this exception (though not explicitly) because the minor party to the partition agreement was allowed to bring a claim many years after reaching majority. This was allowed because the other parties to the agreement had denied her the benefit of the agreement by not relinquishing title to her. 61 N.M. at 490, 303 P.2d at 697.
{16} The record contains no evidence that either Petitioner ever did anything to cure the defect in the oral agreement once they reached the age of majority. Under Gurule, they must have taken some action to accept the agreement for it to be valid. Their failure to receive any benefit from the partition agreement also places them within the exception to the rule in Sisneros that they must disaffirm within a reasonable time. Neither Petitioner was ever given possession, either of their individual tracts under the partition agreement, or of the property as a whole, as cotenants. The record contains no evidence of any action that would have bound both Petitioners to the partition agreement. Petitioners must be considered to have continued as cotenants in the property, therefore, because they have shown that they have a sufficient defense to its enforcement against them.
{17} Having decided that the parties were cotenants of the property, our analysis must diverge substantially from that of the district court and Court of Appeals. A cotenant must give clear notice of his or her adverse possession claim. Filing of the deed is insufficient to establish such notice. See Prince, 72 N.M. at 358-59, 383 P.2d at 832-33 (holding that lessee of holder of determinable fee could not rely on recording of quitclaim deed to establish notice of adverse possession as against reversioner). Further, mere silence in the face of questioning by cotenants will not suffice either. Torrez v. Brady, 37 N.M. 105, 111, 19 P.2d 183, 186 (1932) ("There must be express denial of the title and right to possession of the fellow tenant, brought home to the latter openly and unequivocally."). In Castellano v. Ortega, 108 N.M. 218, 219, 770 P.2d 540, 541 (Ct.App.1989), however, the Court of Appeals held that when one cotenant conveyed the entire property to a third party, recorded the deed, and the third party entered into possession of the property, this served sufficient notice on the cotenants of repudiation of the pre-existing tenancy in common.
{18} The policies behind the strict rule regarding cotenants are directly implicated in this case. We require one cotenant to do "something which amounts to an ouster", Prince, 72 N.M. at 359, 383 P.2d at 832, for two reasons. First, mere possession of the property by one cotenant is consistent with the rights of all the other cotenants. See Apodaca v. Tome Land & Improvement Co., 91 N.M. 591, 596, 577 P.2d 1237, 1242 ("Tenants in common are each entitled to the reasonable use, occupancy, benefit and possession of the common property."). Second, it is not uncommon for heirs of a family estate to inherit property as cotenants, as the parties did here, while only one of the heirs is able to actually occupy the property. It would be improper for the law to encourage disputes between family members in such cases. Velasquez v. Mascarenas, 71 N.M. 133, 143, 376 P.2d 311, 318 (1962) ("Permissive occupation of a family estate by one of the family is so usual that acts of occupation thereof, while adequate to show hostile occupation as to strangers, are not sufficient as between near relatives.").
{19} Here, perhaps because Respondent assumed that the cotenancy was severed due to the oral partition, she does not contend that Decedent ever took the required strong action to disavow Petitioners' rights in the property.[4] Rather, the evidence *334 demonstrated that Petitioners repeatedly asked Decedent about his intentions with regards to the property, but Decedent never responded in any way except evasively. In other words, Decedent never expressly told Petitioners that he claimed to own their portions of the property. He must have done so in order to give adequate notice of his adverse possession claim to his cotenant siblings. Castellano does not provide support for Respondent's position either. Although Decedent deeded the property to a third party (and himself), and he recorded that deed, the third party (his wife) never claimed to acquire title by adverse possession. Further, the grantees of Decedent's deeds were not strangers to the other cotenants, as would provide notice of a hostile claim. Decedent was already a tenant in common with the others, and his wife would naturally be expected to occupy the property with him. Because there was no ouster, Respondent's defense to Petitioners' claims, based on Decedent having been in hostile possession, fails.

B
{20} In addition to the ouster requirement, Decedent must have possessed color of title to the subject property under Section 37-1-22. What will suffice as color of title is a question of law, Armijo v. Armijo, 4 N.M. 57, 63, 13 P. 92, 94 (1887), which we review de novo, Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806. To possess color of title, the claimant must have a "writing or a conveyance of some kind" that purports to convey the land title to which is claimed. Currier v. Gonzales, 78 N.M. 541, 542, 434 P.2d 66, 67 (1967); accord Armijo, 4 N.M. at 63, 13 P. at 94. A void deed will satisfy this requirement. Indeed, if the deed relied upon to establish color of title were effective to create or transfer title, then a claimant under that deed would hardly need to rely on the doctrine of adverse possession. Our statute requires color of title to be acquired in good faith.[5]
{21} "Good faith" in this context is "freedom from a design to defraud the person having the better title," and it does not require the claimant to be ignorant of other claims to the property. Thurmond v. Espalin, 50 N.M. 109, 115, 171 P.2d 325, 329 (1946) (quoting Third Nat'l Exch. Bank v. Smith, 20 N.M. 264, 276, 148 P. 512, 516 (1915), aff'd, 244 U.S. 184, 37 S.Ct. 516, 61 L.Ed. 1071 (1917)) (internal quotation marks omitted). While we have treated the question of the presence or absence of good faith as a factual question, which we review for an abuse of discretion, Palmer v. Denver & Rio Grande W. R.R. Co., 75 N.M. 737, 741, 410 P.2d 956, 958-59 (1966), what constitutes the "minimum requirements to establish good faith" is a legal question, which we review de novo, see id. at 739, 410 P.2d at 957. We will typically apply a presumption that this element has been satisfied by the person claiming title by adverse possession. Id. at 739-40, 410 P.2d at 958. It has been said that "`bad faith'" will be found "not in the relative appearance of validity of the instrument chosen for color of title, but in the methods used in the acquisition of such instrument." Verle R. Seed, Adverse Possession in New Mexico-Part Two, 5 Nat. Resources J. 96, 113 (1965).
{22} This Court has held that the claimant could not have had the requisite good faith in situations similar to the present one. For example, in Palmer, the defendant railroad company conveyed a tract of land to one of the plaintiffs, but specifically excepted a strip of land within its boundaries as not included in the conveyance. 75 N.M. at 738, 410 P.2d at 957. That plaintiff then conveyed the entire tract, including the specifically excluded portion of land, to his mother. She in *335 turn conveyed the same property back to him and his siblings. No consideration changed hands between the mother and son during these transactions. The court found that the transactions were undertaken merely for the purpose of obtaining record title to the disputed property. This Court decided that such maneuvering "clearly fell short" of the legal threshold to establish good faith. Id. at 739, 410 P.2d at 957. The defendants had argued that "color of title was created by the conduct of the plaintiffs, and accordingly was not in good faith." Id. We agreed, holding that the district court did not err in dismissing the complaint at the close of the plaintiffs' case. Id. at 740, 410 P.2d at 958. We concluded that when "color of title is created and obtained with knowledge of its invalidity by one claiming title by adverse possession, there is an absence of that good faith required by the statute." Id.
{23} Similarly, other states that have considered whether a person could have good faith under analogous circumstances have found that some third party must transfer the document of title to the person claiming title by adverse possession. For example, in Y A Bar Livestock Co. v. Harkness, the Supreme Court of Montana decided that a cotenant of property, who was also the sole owner of a corporation, could not create color of title in the property for adverse possession purposes by conveying the property to the corporation.[6] 269 Mont. 239, 887 P.2d 1211, 1216-17 (1994). In other jurisdictions, courts have come to the same conclusion. In State v. King, the West Virginia Supreme Court decided that one could not create color of title by executing a deed to a trust, of which he was also a beneficiary. 77 W.Va. 37, 87 S.E. 170 (1915). The court stated:
[A] deed made by a man to himself could not well be supposed to have the characteristics of color of title. It would not purport to pass title, for, by such a deed a person could not, in the nature of things, pass title, out of himself and back into himself again.... [T]he doctrine fairly and conclusively assumes that there has been a transaction between two or more persons by which a futile effort to pass title from one to another has been made....
Id. at 171-72. The rule appears to be well-settled in other jurisdictions. See White v. Rosser, 27 S.W. 1062, 1063 (Tex.Civ.App. 1894) (holding that the heir of one who executed a deed to himself could not claim color of title); Mylar v. Hughes, 60 Mo. 105, 111 (1875), available at 1875 WL 7763, *3-4 (holding that it would be "mere fraud" for a person to convey title to a third person who then conveys the deed back again without consideration in order to create color of title). The use of such tactics to create color of title patently lacks "freedom from a design to defraud the person having the better title," and we cannot condone it. Thurmond, 50 N.M. at 115, 171 P.2d at 329. We agree with the weight of authority from these jurisdictions that a deed cannot suffice as color of title if it never passed from some third party to the one claiming to acquire title by adverse possession.
{24} In this case, Decedent conveyed the property in dispute to himself and his wife, in joint tenancy in 1978. Prior to this time, Decedent only possessed a tax deed to a small portion of the propertythe same 2 1/4 acres that each sibling attempted to take pursuant to the oral agreement to partition.[7] There is no evidence of any document that purported to convey the entire tract to him, other than the 1978 deed from *336 himself. The similarity between this situation and the methods used by the claimant in Palmer cannot be overlooked. Although the district court did not find that Decedent executed the deed with the express purpose of creating color of title, the fact remains that he could not trace his deed to any similar document coming from anyone else. Like the invalid deed in Palmer, the deed that Respondent now relies upon to establish color of title was created solely by the person wishing to establish title through adverse possession. Respondent's defense to Petitioners' motion for a constructive trust is insufficient, because the deed on which she has relied does not satisfy the statutory requirement of color of title.

C
{25} The Court of Appeals noted in its memorandum opinion that Decedent might have executed the deed to himself and his wife simply for estate planning purposes, not to defraud his siblings. Decedent's wife executed a similar deed to Decedent of her own separate property. We agree that there is a basis in the record for the proposition that Decedent executed the deed for estate planning purposes. Nevertheless, we are not persuaded that this evidence is dispositive. As we have indicated, under our cases Decedent was not in a position to create a color of title in himself.
{26} Further, our cases have repeatedly held that the presumption of good faith does not apply when evidence is presented that the deed was obtained with full knowledge of its invalidity. Palmer, 75 N.M. at 740, 410 P.2d at 958 ("[W]here a conveyance which furnishes claimed color of title is created and obtained with knowledge of its invalidity by one claiming title by adverse possession, there is an absence of that good faith required by the statute."); Apodaca v. Hernandez, 61 N.M. at 454, 302 P.2d at 180 ("The policy of the law prohibits [a deed created and obtained by claimants with knowledge of its invalidity as providing color of title] because they could not indirectly acquire that which the law would not allow them to acquire directly."). Any other rule would effectively create a loophole in the color of title requirement. Anyone seeking to establish title by adverse possession could deed the property to him or herself, and good faith would be presumed. The inherent difficulty in determining the state of mind of someone who creates such a document (as in this case) would put the true owner at a severe disadvantage, if that person were put in the position of having to prove bad faith. Further, it is difficult to imagine how one could create color of title, without having received the property from another, and not know that the document must be invalid.
{27} This Court will reverse the trial court if the findings that have been attacked are not supported by substantial evidence. Yates Petroleum Corp. v. Kennedy, 108 N.M. 564, 569, 775 P.2d 1281, 1286 (1989). "Although it is not proper for us to disagree with a finding supported by substantial evidence, we can and must determine whether the evidence presented substantially supports a finding which has been properly attacked." Getz v. Equitable Life Assurance Soc'y of the United States, 90 N.M. 195, 199, 561 P.2d 468, 472 (1977). We do not rely on evidence that would have supported a different result; we review the record to determine whether we can conclude that substantial evidence supports the result the trial court reached. Gillingham v. Reliable Chevrolet, 1998-NMCA-143, ¶ 14, 126 N.M. 30, 966 P.2d 197.
{28} In the present case, we must conclude that there is no evidence to support the district court's finding of fact that Decedent conveyed the property to himself and his wife "believing the property to be his own." It is undisputed that the deed relied upon as color of title was created by Decedent, whose estate now claims adverse possession. The evidence presented to the district court, however, also establishes that Decedent knew of the deed's invalidity. Decedent was a co-heir of the subject property, along with all of his siblings; on this both sides agree. In order for Decedent to have believed that he obtained title to the entire property, there must have been some event after the death of his mother that could be interpreted this way. His siblings never transferred title to their shares of the property to Decedent. Decedent *337 did not even receive the tax deeds to all of the property. He only received the tax deed to that portion which he claimed under the attempted partition. The tax deed which he possessed may have given him reason to believe that he owned the 2 1/4 acre parcel that he would have received under the parol partition, and thus that he had color of title to that parcel, but it did not give him reason to believe that he owned the entire property.
{29} Respondent points us to no evidence, and we have not found any, that may give us reason to believe that Decedent did not know that the deed he created was invalid. Instead, Respondent only offers the conjecture that Decedent "could very well have believed at the time, after having paid the taxes on the ... parcel ..., that he had a legitimate right to claim the entire property." We believe that payment of taxes alone is not indicative of Decedent's good or bad faith. This is demonstrated by the fact that our statute makes payment of taxes and good faith separate requirements. If payment of taxes were sufficient evidence of good faith, this would render the good faith requirement in the statute surplusage, which we will not do. See Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236 (holding that we construe statutes as a whole so that no part of the statute is rendered surplusage or superfluous). In the absence of any other evidence that might lead us to the conclusion that Decedent believed he owned the property, we cannot accept the trial court's finding to the contrary. The presumption of good faith is inapplicable, and there is no evidence to support such a finding. Because Respondent did not show that Decedent held color of title in good faith, as required by Section 37-1-22, she could not defend against Petitioners' motion on the ground that Decedent had acquired title to the property through adverse possession.

D
{30} We recognize that Decedent's lengthy, unchallenged possession might have led the district court and the Court of Appeals to conclude that the purposes underlying the doctrine of adverse possession were served by recognizing title in his estate. Under our statute, as applied in our cases, however, his possession provided insufficient notice to Petitioners, and his deed was inadequate color of title to support Respondent's defense to their motion. We conclude that not all the purposes underlying the doctrine of adverse possession as it has evolved in New Mexico are served by recognizing title in his estate and denying their motion for a constructive trust.
{31} We note, for example, the interrelationship between the heightened standard that we impose upon cotenants, regarding notice of one's hostile claim, and the requirement of color of title in good faith. Both requirements make it more difficult for a cotenant to acquire title by adverse possession. Although the color of title requirement is the same for all claimants, cotenants or not, that requirement operates in a way that is even more restrictive for a claimant who is a cotenant. This is because it is unlikely that one who already has legal title to an interest in property as a cotenant would be able to acquire title to the property as a whole from some outside source. The difficulty that cotenants encounter under our case law when attempting to acquire title by adverse possession is consistent with the statutory requirements. Our adverse possession statute furthers the policy of quieting title to property, but it is now, as it has always been, a limited vehicle for acquiring title. It protects those who have an insufficient basis to know their rights are being infringed. Cotenants under our case law are treated as a class that need special protection. The color of title requirement imposed by statute supplements the special protection provided by case law.
{32} Further, it is important to recognize that all of the elements of adverse possession under our statute serve the common goal of providing notice to the record owner of the adverse claim. For example, if Decedent had told Petitioners about the 1978 deed, this would have served as the "clear, unequivocal and notorious disclaimer" that our cases require. Prince, 72 N.M. at 359, 383 P.2d at 832. The evidence before us indicates that Petitioners did not even know *338 about the deed until Decedent's will was probated.
{33} Finally, we observe the effect of competing presumptions provided by the case law and the burden of proof in this case. We must presume that Decedent's occupation was permissive, and his possession was not hostile, because he and his siblings were cotenants of the property. See infra ¶ 10. On the other hand, we may not presume that Decedent met the "good faith" requirement because of evidence to the contrary. See infra ¶ 21. The consequences of these two presumptions require us to look at the evidence even more closely. On the evidence offered at trial, we conclude that the presumption of permissiveness prevailed, and Respondent failed to show Decedent's possession was hostile by clear and convincing evidence. Further, we also conclude this was not an appropriate case in which to presume good faith because of the circumstances surrounding the deed on which Respondent must rely.

III
{34} Because the district court held that Decedent had acquired title to the subject property through adverse possession, that court appropriately denied Petitioners' motion to impose a constructive trust in their favor and order an accounting to them by the estate. Now that we have held that the cotenancy was never dissolved, however, this issue must be reconsidered. A constructive trust will be "imposed to prevent the unjust enrichment that would result if the person having the property were permitted to retain it." Aragon v. Rio Costilla Coop. Livestock Ass'n, 112 N.M. 152, 156, 812 P.2d 1300, 1304 (1991). Circumstances such as "fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct" may give rise to such a trust. Id. If a court imposes a constructive trust, the person holding legal title is subjected to an equitable duty to convey the property to a person to whom the court has determined that duty is owed. Id.
{35} In this case, Petitioners have established that the district court erred in determining that they had no title to the tract and thus that the district court's basis in denying their motion lacked support in the evidence. Respondent has suggested that if we conclude that the district court erred in concluding Salome acquired title by adverse possession, the appropriate remedy is a decree imposing a constructive trust for the benefit of Petitioners in an undivided one-fifth interest each. Petitioners, however, have also requested an accounting. The imposition of a constructive trust is an equitable remedy, and as such is within the broad discretion of the district court. Cf. Cafeteria Operators, L.P. v. Coronado-Santa Fe Assocs., L.P., 1998-NMCA-005, ¶ 19, 124 N.M. 440, 952 P.2d 435 (holding that an injunction is an equitable remedy, and as such is within the discretion of the district court). In Navajo Academy, Inc. v. Navajo United Methodist Mission School, Inc., we stated:
Equitable remedies ... are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit to their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties.
109 N.M. 324, 329, 785 P.2d 235, 240 (1990) (quoting 1 John Norton Pomeroy, A Treatise on Equity Jurisprudence § 109, at 141 (Spencer W. Symons ed., 5th ed.1941)) (omission in original). Given this great flexibility, we think the district court is better equipped to determine the remaining issues on remand. We note, for example, that in considering the propriety of an accounting, the district court should consider not only the rental value of the tract but also expenses such as taxes paid by Decedent.

IV
{36} We hold that the district court and Court of Appeals erred in concluding that Decedent acquired title to the subject property through adverse possession, and thus that Petitioners' motion should be denied. Decedent did not unequivocally and expressly inform Petitioners of his hostile intent. Further, Respondent did not show that Decedent *339 acquired good faith color of title in the property. We therefore reverse and remand for proceedings consistent with this Opinion.
{37} IT IS SO ORDERED.
WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA, and RICHARD C. BOSSON, Justices.
NOTES
[1] The other putative cotenants of this tract have not participated in this matter despite being given adequate notice by the district court. Joe Gallegos, the son of Donaciana Duran Gallegos, participated at trial. He claimed an interest in the 2 1/4 acre parcel assessed to Donaciana that Fortunato Martinez purchased from the State Tax Commission. The district court found that Joe Gallegos has no interest in the parcel, and he has not appealed that ruling.
[2] At that time, whether a person died intestate or testate, real property passed directly to the heirs. See NMSA 1953, § 31-7-2 (1889, repealed 1975) ("The real estate of a decedent shall pass directly to the heirs or devisees ...."); see also In Re Estate of Baca, 95 N.M. 294, 296, 621 P.2d 511, 513 (1980) (holding that under this statute, the real property of an intestate decedent passed directly to his heirs upon his death). Accordingly, all five siblings became cotenant owners of the subject property when their mother died. Cf. NMSA 1978, § 45-2-101(A) (1993); § 45-3-101(B)(1) (1975) (distinguishing the passage of title to intestate heirs from the passage of title under a will).
[3] Respondent does not argue that the doctrine of laches should bar Petitioners' claim to an interest in the property, nor was that defense pled as provided in Rule 1-012(B) NMRA 2003, but her argument that the lapse of time should weigh in her favor implicates the doctrine. Further, this doctrine may have been an implicit underpinning of the district court and Court of Appeals' holdings. "The doctrine of laches prevents litigation of a stale claim where the claim should have been brought at an earlier time and the delay has worked to the prejudice of the party resisting the claim." Garcia v. Garcia, 111 N.M. 581, 588, 808 P.2d 31, 38 (1991). One asserting the defense of laches must satisfy four distinct elements, one of which is lack of notice that the other party would assert a claim. Id. ("The elements required to be proved by one asserting the defense are: (1)[c]onduct on the part of the defendant, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which [she] bases [her] suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is not held to be barred." (quoting Baker v. Benedict, 92 N.M. 283, 286, 587 P.2d 430, 433 (1978))). Because we hold that Decedent did not give clear notice of adverse intent that would have severed the cotenancy, the doctrine is inapplicable in analyzing Respondent's claim based on adverse possession. "[A]lthough the equitable principles of the doctrine of laches do not require the stringent elements of possession as does the adverse possession statute, the principles of equity nevertheless require that the notice to the person to be bound be clear." Burnham v. City of Farmington, 1998-NMCA-056, ¶ 37, 125 N.M. 129, 957 P.2d 1163. This statement is especially applicable in disputes between cotenants of property.
[4] It would have been Respondent's burden to show when the cotenancy was severed, because this is when the adverse holding would have begun, absent an ouster. See Birtrong v. Coronado Bldg. Corp., 90 N.M. 670, 672, 568 P.2d 196, 198 (1977) ("The burden of proving title by adverse possession is upon him who asserts it. That burden must be met by clear and convincing evidence." (citation omitted)); see also 16 Powell, supra, § 91.05[5][a].
[5] We note that the statute, by its terms, does not limit the good faith requirement to apply to color of title only. See § 37-1-22 ("In all cases where any person ... shall have had adverse possession continuously and in good faith under color of title for ten years ... the person ... shall be entitled to keep and hold in possession such quantity of lands...."). In practice, however, our cases have always linked the good faith requirement specifically with color of title. See, e.g., Palmer, 75 N.M. at 740, 410 P.2d at 958. We need not address whether the phrase "good faith" modifies other elements of color of title in this Opinion. See Thurmond v. Espalin, 50 N.M. 109, 115, 171 P.2d 325, 329 (1946) (making the same observation).
[6] In the great majority of other jurisdictions, color of title is not an absolute requirement to establish title through adverse possession. See Quarles v. Arcega, 114 N.M. 502, 510, 841 P.2d 550, 558 (Ct.App.1992). Nevertheless, in rejecting deeds as color of title under similar circumstances, courts in other jurisdictions have found a lack of good faith. See, e.g., Y A Bar Livestock Co., 887 P.2d at 1216. In this state, where color of title (in good faith) is a statutory requirement, the reasoning of those courts is helpful and persuasive.
[7] This tax deed would have inured to the benefit of all the cotenants, despite the fact that Decedent obtained it individually, because "it is the duty of all cotenants who have an interest in the property to pay the entire tax due, subject to a right of reimbursement from the other cotenants." Cebolleta Land Grant, ex rel. Bd. of Trustees v. Romero, 98 N.M. 1, 3, 644 P.2d 515, 517 (1982); see also Velasquez, 71 N.M. at 138, 376 P.2d at 314 ("[A] cotenant who redeems from a tax sale does so for the benefit of all the cotenants....").