This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**B.T.U. BLOCK & CONCRETE, INC.,**
**a New Mexico corporation,**

    Plaintiff-Appellee,

v.                     **NO. 32,092**

**TONY C. ORTEGA,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Eugenio S. Mathis, District Judge**

Nicholas T. Leger
Las Vegas, NM

L. Helen Bennett
Albuquerque, NM

for Appellee

Walcott & Henry, P.C.
Donald A. Walcott
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VIGIL, Judge.**

{1}     Defendant Tony Ortega (Ortega) appeals the district court's judgment after a bench trial quieting title to two tracts of land in favor of B.T.U. Block & Concrete, Inc. (BTU). Concluding that BTU satisfied the elements of adverse possession of Tract 1, we affirm BTU's ownership as to Tract 1. However, because BTU failed to prove the elements of adverse possession of Tract 2, we reverse as to Tract 2. We remand to the district court to resolve BTU's claim for a private prescriptive easement over Tract 2.

**BACKGROUND**

{2}     BTU initiated this suit to quiet title to two adjacent tracts of land in Las Vegas, New Mexico (Tract 1 and Tract 2) . Tract 1, consisting of 19.077 acres, is situated between some railroad tracks on the west and Tract 2 on the east. Tract 2, a strip of land measuring approximately 80 feet from east to west and 1500 feet from north to south, shares its western border with Tract 1 and eastern border with the Interstate 25 right-of-way. BTU conceded that Ortega has record title to Tract 2. No fences have ever separated Tract 1 from Tract 2. However, there is a gravel road on Tract 2, along its border to Tract 1, that extends from a public paved road. BTU uses this road as its primary access to Tract 1. BTU has used the area east of the road on Tract 2 for employee parking and to store concrete block since it purchased the property in 1983

from T. Brown Constructors, Inc. (Brown), which had also utilized Tract 2.

{3}    In its complaint, BTU sought to quiet title to Tract 1 to prevent Ortega from making any adverse claims to it, while it claimed title to Tract 2 by adverse possession. In the alternative, BTU sought a private prescriptive easement over Tract 2. The district court ruled that BTU's record title to Tract 1 was not contested and that BTU owns Tract 1 in fee simple absolute. The district court quieted title to Tract 2 in favor of BTU by adverse possession. Ortega appeals. Further pertinent facts are discussed in the relevant sections below.

**DISCUSSION**

**A.    Tract 1**

{4}    Ortega challenges BTU's title to Tract 1, arguing that the district court erred in concluding that BTU's record title to Tract 1 was uncontested. He contends that while he did not contest BTU's ownership of Tract 1 in his answer, the court later granted him permission to amend his answer during trial to dispute BTU's title to Tract 1. Although he claims no ownership of Tract 1 on appeal, Ortega maintains that the evidence shows that BTU lacks record title to Tract 1 and that BTU did not present clear and convincing evidence to prove title by adverse possession over Tract 1.

{5}    We agree that Ortega did contest BTU's record title to Tract 1 because the district court granted Ortega's motion to amend his answer. During Ortega's trial

3

testimony, using an exhibit containing a surveyor's map of Tract 1 and Tract 2, Ortega pointed to areas of Tract 1 that overlapped with land south and west of Tract 2 that he claimed to own by virtue of deeds he acquired in 2003 and 2004. BTU objected, arguing that Ortega should not be permitted to challenge BTU's ownership of Tract 1 in his testimony because he conceded that BTU owned Tract 1 in his answer to BTU's complaint. At this point, Ortega moved to amend his answer so that he could challenge BTU's ownership of Tract 1, and the district court granted this motion.

**{6}** It is unnecessary for this Court to clarify the district court's ambiguous findings and conclusions regarding whether Ortega contested BTU's ownership of Tract 1. The district court also ruled that BTU "is the owner . . . in fee simple absolute" of Tract 1. We will affirm the district court's decision regarding Tract 1 if it is right for any reason, so long as it is not unfair to Ortega that we do so. *See Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 ("[I]t is established law that our appellate courts will affirm a district court's decision if it is right for any reason, so long as the circumstances do not make it unfair to the appellant to affirm."). In his briefing to this Court, Ortega argued that BTU failed to establish record title or title by adverse possession over Tract 1. Thus, it is not unfair to Ortega for us to address the issue of BTU's ownership of Tract 1 under either of these theories.

4

## 1.	Record Title

{7}	BTU recorded a warranty deed from Brown in 1983 that did not contain a legal description of the property or any description such that it could be located by a surveyor. In 1992, the deed was re-recorded with the legal description of Tract 1 attached to it as Exhibit A. The re-recorded deed notes, "THIS DEED IS BEING RE-RECORDED IN ORDER TO INCLUDE THE EXHIBIT 'A' WHICH WAS OMITTED FROM THE ORIGINAL RECORDING." Jay Moore, a witness for Ortega who owns a title company, testified that occasionally in the title industry, it is discovered that an exhibit is accidentally omitted from a recording and when it is discovered, the title company will re-record the deed with the exhibit attached. Brown acquired title to Tract 1 in January 1981 from Harold Saueresigg. The warranty deed from Saueressig to Brown contains the same legal description to Tract 1 as is the description attached as Exhibit A of BTU's 1992 re-recorded deed.

{8}	Referring to NMSA 1978, Section 14-8-4 (1981, amended 2011 and 2013), Ortega contends that the 1983 deed cannot give BTU record title of Tract 1 because it contained no legal description of Tract 1 and because the 1992 deed did not contain a contemporaneous signature by Brown as grantor, it should not have been accepted for recording. Section 14-8-4, at the pertinent time, provided that "[a]ny instrument of writing, *not duly acknowledged* and certified, may not be filed and recorded, nor

considered of record, though so entered." (Emphasis added.) However, we decline to consider the legal significance, if any, of the 1983 acknowledgment on the 1992 re-recorded deed. We need not decide whether BTU has record title to Tract 1, because, as we next explain, BTU proved that it satisfied the elements of adverse possession of Tract 1 by clear and convincing evidence.

**2.      Adverse Possession**

{9}      "[A] party claiming ownership of land by adverse possession must prove by clear and convincing evidence continuous adverse possession for ten years under color of title, in good faith, and payment of taxes on the property during these years." *In re Estate of Duran*, 2003-NMSC-008, ¶ 8, 133 N.M. 553, 66 P.3d 326 (internal quotation marks and citation omitted); *see* NMSA 1978, § 37-1-22 (1973) (adverse possession statute).

{10}      Ortega does not challenge that BTU possessed Tract 1 for at least ten years nor that it paid taxes on Tract 1 for these years. Indeed, evidence in the record shows that BTU possessed and paid taxes on Tract 1 for more than thirty years. Ortega solely challenges  BTU's good faith color of title.

{11}      In order to achieve color of title, the adverse possessor "must have a writing or a conveyance of some kind that purports to convey the land title to which is claimed." *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 22, 150 N.M. 428, 260

P.3d 414 (internal quotation marks and citation omitted); *see* § 37-1-22 (stating that an adverse possessor who has met the other requirements for adverse possession "shall be entitled to keep . . . such quantity of lands as shall be specified and described in some writing purporting to give color of title to such adverse occupant"). "What will suffice as color of title is a question of law, which we review de novo." *In re Estate of Duran*, 2003-NMSC-008, ¶ 20 (citation omitted). On its face, the 1992 deed contains the elements a document is required to have in order to achieve color of title for BTU. The deed purports to convey the land described in Exhibit A, which contains the legal description of Tract 1, from Brown to BTU.

{12} Ortega challenges the good faith element of color of title. "Good faith in this context is freedom from a design to defraud the person having the better title." *Id.* ¶ 21 (internal quotation marks and citation omitted). "We will typically apply a presumption that this element has been satisfied by the person claiming title by adverse possession." *Id.* "[B]ad faith will be found not in the relative appearance of validity of the instrument chosen for color of title, but in the methods used in the acquisition of such instrument." *Id.* (internal quotation marks and citation omitted). Ortega argues that there is no evidence that Brown or any other third party provided the legal description of Tract 1 that was eventually attached as Exhibit A in the re-recorded deed. Ortega insinuates that because there is no evidence of the legal

7

description's origin, BTU could have obtained a copy and attached the description itself. Quoting *In re Estate of Duran*, 2003-NMSC-008, ¶ 23, he asserts, "[A] deed made by a man to himself could not well be supposed to have the characteristics of color of title." However, there is no evidence in the record to support Ortega's assertions.

{13}     The evidence in the record supports our presumption that BTU acquired the 1992 deed in good faith. The 1992 deed itself notes that it is being re-recorded to include Exhibit A because it was omitted from the original deed. The BTU principal testified that he had no knowledge of the circumstances of the re-recording, and a title company owner testified that it is standard in the industry to simply re-record deeds with attachments that were initially erroneously omitted. The 1983 deed, although no description was attached, does demonstrate that Brown sold BTU some property. There was also testimony that BTU had worked with Brown on a highway bypass construction project and that BTU bought property from Brown when the project was complete and Brown put Tract 1 up for sale and moved off of it. BTU moved on it and immediately set up its cement business. There was no evidence presented at trial to suggest that the re-recordation of the 1992 deed was made in bad faith by BTU to attempt to gain ownership of land that it did not own. Therefore, we conclude that the evidence unquestionably provides BTU good faith color of title to Tract 1. Therefore,

8

BTU has satisfied all of the elements of adverse possession of Tract 1.

**B.    Tract 2**

{14}    Ortega also challenges the district court's decision to quiet title to Tract 2 in favor of BTU by adverse possession.  The district court found that BTU had openly and continuously occupied a portion of Tract 2 since 1983, that BTU paid all real estate taxes on Tract 2, and that BTU had "proven all of the elements of adverse possession over Tract 2 by clear and convincing evidence."  Ortega argues there is not substantial evidence that BTU had color of title over Tract 2 nor that BTU paid taxes on Tract 2.  We agree.

**1.    Color of Title**

{15}    Here, BTU relies on its chain of title and deed to Tract 1 as color of title for Tract 2.  BTU asserts that the district court resolved the "conflicting evidence" of color of title in its favor.  However, there is no conflicting evidence in the record regarding what parcel of land BTU's deed purports to convey.  The district court found that the legal description in the deed is for Tract 1.  Despite BTU's insistence at oral argument that its expert testified as to an area of "overlap" between the description of Tract 1 in BTU's deed and the land in Tract 2, BTU's expert in fact testified that the legal description in BTU's deed solely describes Tract 1.  He even identified Tract 1 as the parcel of land described in BTU's deed by drawing an outline

9

of Tract 1 on an exhibit containing a surveyor's map of Tract 1 and Tract 2. There is no overlap between Tract 1 and Tract 2 on the map. Any "overlap" referenced by the expert was in reference to Ortega's other property he acquired in deeds for the land south and west of Tract 2.

{16} In its brief to this Court, BTU argued that it offered sufficient evidence that it "relied" on its deed to Tract 1 "in claiming title to the land encompassed by both Tract [1] and Tract [2]." BTU's argument fails because the deed BTU used to establish color of title to Tract 2 does not describe the land in Tract 2, so it cannot provide color of title for Tract 2. The writing offered for color of title "must attempt to give title to the adverse occupant, but for some reason fails to do so." *Slemmons v. Massie*, 1984-NMSC-108, ¶ 4, 102 N.M. 33, 690 P.2d 1027; *accord Currier v. Gonzales*, 1967-NMSC-259, ¶ 5, 78 N.M. 541, 434 P.2d 66. Our Supreme Court has repeatedly declined to find color of title when the document offered fails to attempt to convey the property claimed. *See, e.g.*, *Fischer v. Mascarenas*, 1979-NMSC-063, ¶ 8, 93 N.M. 199, 598 P.2d 1159 (ruling that "[s]ince the uncontradicted evidence of the survey indicates that the [deeds offered for color of title] do not describe the land in question, those deeds cannot be the basis of a valid claim and cannot provide color of title for purposes of adverse possession"); *Esquibel v. Hallmark*, 1978-NMSC-080, ¶ 9, 92 N.M. 254, 586 P.2d 1083 (holding that the adverse possessors failed to show color of

10

title since the deed they used did not describe the portion of property they claimed by adverse possession).

**{17}** BTU argues that because it *believed* in good faith that its deed described Tract 2 in addition to Tract 1, the deed provides color of title to Tract 2. The district court found that BTU in good faith believed that the warranty deed from Brown transferred all of the land encompassing Tract 1 and Tract 2. However, BTU offers no legal support that an adverse possessor's good faith belief that a document provides title to property is sufficient to achieve color of title over that property. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Without such authority, we are left with the well-settled law that the document used to achieve color of title over a piece of land must *purport to convey* that land, *City of Rio Rancho*, 2011-NMSC-037, ¶ 22, but for some reason fails to do so, *Slemmons*, 1984-NMSC-108, ¶ 4. We therefore reject BTU's reliance on its erroneous good faith belief that its deed for Tract 1 included Tract 2 as color of title to Tract 2.

**2.      Payment of Taxes**

**{18}** Ortega also challenges the district court's finding that BTU paid all real estate taxes assessed against Tract 2. Because BTU lacks color of title, it is not necessary for us to answer this argument. Title by adverse possession cannot be proved unless

all of these elements are established. *Slemmons*, 1984-NMSC-108, ¶ 6. However, we address this argument as an alternative disposition.

{19} BTU asserts that the district court properly resolved "the conflicting evidence of payment of taxes" in favor of BTU. However, there is no conflicting evidence regarding BTU's payment of taxes in the record. In fact, there is no evidence in the record whatsoever that BTU paid any taxes on Tract 2. The evidence of BTU's tax payments shows that BTU paid taxes from 1992 to 2007 on 19.08 acres. BTU's deed to Tract 1 covers 19.077 acres. While the San Miguel County treasurer testified that BTU also paid all taxes it was assessed from 1983 to 1991, no records existed for this period so there is no evidence that the acreage that was assessed for these years covered Tract 2.

{20} BTU relies on testimony from San Miguel County Tax Assessor Elaine Estrada that records "showed BTU to be the owner of the land in question for taxing purposes." Ms. Estrada testified that BTU's property was formerly plotted on the tax assessor's map as encompassing both Tract 1 and Tract 2 for tax assessment purposes and that Ortega's property was plotted as the parcel north of BTU. She also testified, however, that the tax assessor's office made an error when plotting Ortega's property and did not plot it as indicated by the survey, which is more accurate. Ms. Estrada advised that Ortega's property was plotted correctly on the county assessor's map in

12

2001 and that she was unsure as to how many years prior to that the map was wrong.

{21}    Ms. Estrada's testimony and the exhibit of the old assessment map showing BTU being assessed for Tract 2 does not provide a conflict in the evidence regarding what taxes BTU actually paid. There was no evidence in the record that BTU ever even saw the map. Even if it had, the erroneous map is not evidence of what was actually assessed nor is it a record of payment of taxes on Tract 2. Again, the actual tax assessments to and payments made by BTU only covered 19.08 acres. Even BTU's principal conceded in his testimony that it appears BTU was only paying taxes on 19.08 acres, but he had always (erroneously) assumed that 19.08 acres included all of the land between the railroad tracks and the highway right-of-way to include Tract 2. The district court's finding that BTU paid taxes on Tract 2 is therefore not supported by substantial evidence.

{22}    Despite its inability to show any actual payments of taxes on Tract 2, BTU appears to rely on its good faith payment of all taxes assessed by the San Miguel County tax assessor as satisfaction of the payment of taxes element of adverse possession. BTU asserts that "[w]here BTU occupied and used the lands in question, and paid the taxes as billed by the authorities, the presumption must arise that the payment of taxes requirement [in the adverse possession statute] was met." Whether the erroneous belief that tax payments cover a disputed parcel of property is sufficient

13

to satisfy the payment of taxes element is a legal question, which we review de novo. *See In re Estate of Duran*, 2003-NMSC-008, ¶ 21.

{23} BTU urges this Court to apply the same rationale regarding a good faith payment of taxes utilized by our Supreme Court in *Pratt v. Parker*, 1953-NMSC-005, 57 N.M. 103, 255 P.2d 311. We decline to do so. *Pratt* involved plaintiffs who had paid the taxes they were billed, believing that the payments covered the taxes for the property they owned. *Id.* ¶ 8. However, the tax roll erroneously described their property, thus they were actually paying the taxes on the described property, which was not owned by them. *Id.* ¶¶ 4, 8. The Court agreed with the plaintiffs' contention that since they had paid taxes on what was assessed "in good faith" and "thinking and intending" the payment to cover the property they owned, the payments constituted a good defense against a tax sale. *Id.* ¶ 8. The tax assessor's mistake in *Pratt* could have potentially caused the plaintiffs to lose property they actually owned despite their good faith tax payments. Whereas, here, BTU attempts to use its good faith tax payments on property it owned as grounds to gain title to property it does not own and for which it paid no taxes. The rationale utilized in *Pratt* is not applicable under such circumstances. BTU's failure to pay taxes on Tract 2 is fatal to its claim for adverse possession over Tract 2. *See Platt v. Martinez*, 1977-NMSC-026, ¶ 4, 90 N.M. 323, 563 P.2d 586 (refusing to consider whether the defendant met any of the other

14

elements of adverse possession since there was no evidence that the defendant had paid taxes on any more land than what was covered by his deed).

**CONCLUSION**

**{24}** We affirm the district court's decision regarding Tract 1. We reverse the district court's decision regarding Tract 2 and remand to the district court to resolve BTU's remaining claim for a private easement by prescription over Tract 2.

**{25}** **IT IS SO ORDERED**.


_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**


_____
**RODERICK T. KENNEDY, Chief Judge**



_____
**JONATHAN B. SUTIN, Judge**